

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0658-11

**CONRAD LILLY, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELANT'S PETITION FOR DISCRETIONARY REVIEW**
**FROM THE ELEVENTH COURT OF APPEALS**
**JONES COUNTY**

HERVEY, J., delivered the opinion of the Court in which PRICE, WOMACK, JOHNSON, KEASLER, COCHRAN, and ALCALA, JJ., joined. KELLER, P.J., concurred. MEYERS, J., dissented.

## O P I N I O N

Appellant, Conrad Lilly, was charged with two counts of assault on a public servant. He now asks this Court to reverse the judgment of the court of appeals, which held that his trial proceedings, which were convened at the prison-chapel courtroom, were not closed to the public, that a violation of the Establishment Clause is not structural error, and that the violation of the Establishment Clause in his case was harmless. *Lilly v.*

*State*, 337 S.W.3d 373, 380, 384 (Tex. App.—Eastland 2011). We hold that Appellant showed that his trial was closed to the public, and because that closure was not justified, we reverse the judgments of the court of appeals and trial court. We remand this cause to the trial court for a new trial.

## BACKGROUND

Appellant was an inmate at the French Robertson Unit (the Unit), a maximum-security prison operated by the Texas Department of Criminal Justice. While incarcerated, Appellant was indicted on two counts of assault on a public servant. *See* TEX. PENAL CODE § 22.01(b)(1). The trial judge arraigned Appellant at the Unit's chapel,[1] which also serves as a branch courthouse for Jones County. *See* TEX. LOC. GOV'T CODE § 292.0231 (allowing a commissioners court of certain counties to "provide for, operate, and maintain a branch courthouse outside the county seat"); *see also Lilly*, 337 S.W.3d at 376. After his arraignment, Appellant filed a pretrial motion to transfer his trial proceedings from the chapel courthouse to the public county courthouse in Anson. The trial judge held a joint hearing on that motion,[2] and at the conclusion of the hearing, the trial court overruled Appellant's motion to transfer. Appellant then pled guilty in a

---

[1]TEX. GOV'T CODE § 24.012(e).

[2]Appellant's counsel represented all twelve inmates scheduled to appear before the court that day. In addition to filing a motion to transfer proceedings in Appellant's case, counsel also filed a Motion to Transfer Proceeding to the Public Courthouse on behalf of his other ten clients (one inmate died before the hearing). Eleven separate motions to transfer were filed, but only one hearing was held. The ruling of the trial court at the conclusion of that hearing was applicable to each case.

bench trial pursuant to a plea bargain and was sentenced to six years' confinement.

On appeal, Appellant argued that the trial court erred in overruling his motion to transfer his proceedings because he had met his burden to show that his trial was closed to the public and that his Sixth Amendment right to a public trial was violated. *Lilly*, 337 S.W.3d at 377. He also argued that holding his trial proceedings in the prison-chapel courtroom at the Unit violated the Free Exercise Clause and the Establishment Clause and that a violation of the Establishment Clause is structural error that does not require a showing of harm. *Id.* The court of appeals disagreed. It held that Appellant failed to prove that his trial was closed to the public because he offered no evidence that anyone was actually prohibited from attending his trial and because he produced no evidence that members of the public were "dissuaded from attempting" to attend his trial due to its location. *Id.* at 380. It also held that, although convening Appellant's trial in the Unit's chapel violated the Establishment Clause, that violation was harmless and did not contribute to Appellant's conviction. *Id.* at 384; *see also* Tex. R. App. P. 44.2(a).

We granted Appellant's petition for discretionary review on two grounds: (1) whether "[t]he Eleventh Court of Appeals erred in finding that Appellant did not show that the prison chapel was not open to the public[,]"[3] and (2) whether "[t]he Court of

---

[3]We recently reviewed and reversed the holding of the Eleventh Court of Appeals in another case dealing with the closure of a criminal defendant's trial to the public. *See Steadman v. State*, PD-1356-10, 2012 WL 716010, at *9 (Tex. Crim. App. Mar. 7, 2012). However, we were not asked, so we did not address, whether the appellant in that case satisfied his burden to show that his trial was closed to the public. We are squarely presented with this issue today.

Appeals correctly found that the State violated the Establishment Clause by conducting [Appellant]'s court proceedings in the chapel, but it erred when it found that this violation was not structural error and dismissed the violation as 'harmless.'" Because we sustain Appellant's first ground for review and remand this cause for a new trial, we do not address his second claim.

**ARGUMENTS OF THE PARTIES**

### *A. State*

The State first argues that Appellant waived his claim that his right to a public trial was violated. Specifically, the State argues that, although Appellant initially preserved his Sixth Amendment complaint when the trial court overruled his motion to transfer, he later *waived* his preserved open-trial claim when, as part of his plea bargain agreement, Appellant signed documents acknowledging that his waiver and stipulations were entered in "open court."

Next, the State contends that Section 24.012(e) of the Texas Government Code, which authorizes a district judge to hear certain nonjury matters at a correctional facility, is constitutional.[4] It agrees with Appellant that Article V, Section 7, of the Texas

---

[4]Section 24.012(e) of the Texas Government Code provides,

> A district judge may hear a nonjury matter relating to a civil or criminal case at a correctional facility in the county in which the case is filed or prosecuted if a party to the case or the criminal defendant is confined in the correctional facility. For purposes of this subsection, "correctional facility" has the meaning assigned by Section 1.07, Penal Code.

Constitution generally requires that court be held at the county seat.[5]  However, the State reasons that the same provision also allows for exceptions "as otherwise provided by law," and Section 24.012(e) of the Texas Government Code and Section 292.0231 of the Texas Local Government Code are two such exceptions.

The State also argues that the court of appeals correctly concluded that Appellant failed to carry his burden to show that his trial was closed to the public.  To support its argument, the State notes that the docket for the prison-chapel courtroom was posted at the Jones County Courthouse a month prior to the pretrial hearing and that the docket reflected that the hearing would be at the Unit.  The State also disputes Appellant's assertion that a person wishing to attend prison-chapel trial proceedings would have to be on a prisoner's approved visitor list to enter the Unit, and it points to the testimony of the assistant warden that anyone could be admitted to the Unit with the permission of the on-duty warden.  Moreover, the State argues that "security is security . . . " and, even though Appellant's bench trial was held in a prison, the rules of the prison do not transform the branch courthouse into a non-public place.  *Hernandez v. State*, 914 S.W.2d 218, 221-22 (Tex. App.—El Paso 1996, pet. ref'd).

---

TEX. GOV'T CODE § 24.012(e).

[5]Article V, Section 7, of the Texas Constitution states in relevant part,

The Court shall conduct its proceedings at the county seat of the county in which the case is pending, except as otherwise provided by law.

TEX. CONST. art. V, § 7.

Finally, the State avers that the court of appeals was correct when it held that prisons have the right to limit access to the premises, and it draws a distinction between non-public court proceedings, and court proceedings such as Appellant's, that no one chooses to attend.

**B. Appellant**

Appellant disagrees with the State's waiver argument, and he contends that he preserved his Sixth Amendment claim because he objected to the prison trial proceedings, he filed two motions challenging the prison proceedings, the trial judge explicitly ruled against his motion, and the trial judge certified his right to appeal. *See* Tex. R. App. P. 33.1; *see also Montanez v. State*, 195 S.W.3d 101, 104-05 (Tex. Crim. App. 2006) (holding that certification of appeal is some evidence that the trial court implicitly overruled the defendant's motion).

Appellant also argues that he has a right to a public trial under the Texas Constitution and the Texas Code of Criminal Procedure, in addition to the Sixth Amendment, and he contends that his right was violated when the trial court sua sponte convened his trial in the prison-chapel courtroom. *See* TEX. CONST. art. I, §§ 10, 13; TEX CODE CRIM. PROC. art. 1.24; *see also* TEX. GOV'T CODE § 24.012(e) (authorizing district court judges to hold certain trial proceedings in correctional facilities). However, Appellant has failed to separate his federal and state issues into separate grounds and to provide individual substantive analysis or authorities to support his claim. Because

Appellant did not adequately brief his state constitutional arguments, we do not address them. *See DeBlanc v. State*, 799 S.W.2d 701, 706 (Tex. Crim. App. 1990).

Regarding his federal constitutional claim, Appellant contends that holding his bench trial in the Unit branch courthouse violated his Sixth Amendment right to a public trial because "prisons are not open to the public, and are more like military zones than public places." *Adderley v. Florida*, 385 U.S. 39, 42 (1966); *see Gannett Co. v. Depasquale*, 443 U.S. 368, 392 (1979); *see also Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119 (1977). However, it is well settled that courts will refrain from reaching the merits of a facial challenge unless that claim is essential to the appeal. *Ex parte Salfen*, 618 S.W.2d 766, 770 (Tex. Crim. App. 1981). In this case, Appellant's facial challenge to Section 24.012(e) is not essential to his appeal because we grant relief on his as-applied claim. Thus, we need not address this aspect of Appellant's claim.

Alternatively, Appellant argues that the restrictive admittance policies in place at the Unit had the cumulative effect of closing his trial to the public. To support his argument, Appellant cites evidence admitted at the pretrial hearing regarding the double razor fences, locked metal doors, and high-security procedures. He also cites testimony that only people who were already on an inmate-defendant's approved visitor list could enter the branch courthouse to attend proceedings, that only ten names can appear on that list at any given time, and that the visitor list can be modified only once every six months.

In addition, Appellant refers to testimony that the media and other members of the public would have been prohibited from entering unless TDCJ officials in Huntsville preapproved the media's request. Appellant also notes that people attempting to attend could be denied entrance if they wore offensive clothing and that unaccompanied minors and people released from confinement within the last two years were unable to enter the Unit at all.

## WAIVER OF SIXTH AMENDMENT CLAIM

Although the State has failed to cite any authority for its waiver proposition and this question appears to be novel for this Court, we are not without relevant case law to guide our decision. *See Alzarka v. State*, 90 S.W.3d 321, 324 (Tex. Crim. App. 2002). In *Alzarka*, the defendant pled guilty pursuant to a signed plea bargain that included a waiver of her right to appeal. *Id.* at 322. Nonetheless, the defendant appealed the judgment of the trial court and, on direct appeal, the court of appeals held that the appellant's pretrial waiver was enforceable and dismissed her appeal. *Id.* We reversed the judgment of the court of appeals and held that the court "intended for [the defendant] to have the right to appeal, that such was a term of the plea agreement, and that the inclusion of, or failure to cross out, the language about waiving appeal in the plea forms was an oversight." *Id.* at 323-24. In reaching our holding, we noted that it was significant that the trial court did not admonish the defendant that she was waiving her right to appeal and that the trial court specifically granted her permission to appeal. *Id.* at

323.  It was also relevant that the record showed discussions confirming the existence of an agreement that the appellant could appeal the trial court's judgment and that those discussions took place on the same day as the plea proceeding.  *Id.* at 324.

In this case, the record shows that the State did not argue that Appellant waived his public-trial claim until Appellant actually appealed, that the State signed the plea agreement certifying Appellant's right to appeal his public-trial claim, and that the parties and the court were aware of Appellant's intention to appeal the open-trial issue.  The plea agreement discussions between Appellant, the State, and the trial judge took place immediately after the trial court overruled Appellant's motion to transfer the court proceedings.  It was during this plea-agreement discussion, where all parties were present, that the trial court explicitly granted Appellant permission to appeal.

After reviewing the record, we find the State's argument is without merit, and we hold that the record contains sufficient contradictory evidence to rebut any presumption that Appellant intended to waive his public-trial claim.  *See id.*  Having determined that Appellant did not waive his claim that his trial was closed to the public, we now turn to the merits of that claim.

## SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL

The Sixth Amendment of the United States Constitution guarantees an accused the right to a public trial in all criminal prosecutions.  U.S. CONST. amend. VI.  And the Supreme Court has held that the violation of a criminal defendant's Sixth Amendment

right to a public trial is structural error that does not require a showing of harm. *Johnson v. United States*, 520 U.S. 461, 468-69 (1997); *see also Steadman*, 2012 WL 716010, at *9. Moreover, the Court has held that the right to a public trial was created for the benefit of the accused; thus, the right is a personal one. *Presley v. Georgia*, 130 S. Ct. 721, 723 (2010) ("The Sixth Amendment right, as the quoted language makes explicit, is the right of the accused."); *see Waller v. Georgia*, 467 U.S. 39, 46 (1984); *accord In re Oliver*, 333 U.S. 257, 270 n.25 (1948). The public-trial guarantee benefits the accused by acting as "an effective restraint on possible abuse of judicial power." *In re Oliver*, 333 U.S. at 506. It has also been found that "judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings." *Waller*, 467 U.S. at 46 n.4 (quoting *Estes v. Texas*, 381 U.S. 532, 588 (1965) (Harlan, J., concurring)). And under Texas law, a plea-bargain proceeding is still a trial. *Murray v. State*, 302 S.W.3d 874, 880 (Tex. Crim. App. 2009) (holding that a plea-bargain proceeding in which no issues are contested is still a trial). Thus, the right to a public trial applies to plea-bargained bench trials in a correctional facility because they are trials within the meaning of the Sixth Amendment, and the need for the public to have a meaningful opportunity to attend a criminal defendant's bench trial in a prison is no less important than in a jury trial at the public county courthouse.

The right to a public trial is not absolute and may be outweighed by other competing rights or interests, such as interests in security, preventing disclosure of non-

public information, or ensuring that a defendant receives a fair trial. *Waller*, 467 U.S. at 45. However, such cases will be rare, and the presumption of openness[6] adopted by the Supreme Court must be overcome. *Id.* To rebut the presumption of openness and to allow closure of an accused's trial, or any part thereof,

> [(1)] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [(2)] the closure must be no broader than necessary to protect that interest, [(3)] the trial court must consider reasonable alternatives to closing the proceeding, and [(4)] it must make findings adequate to support the closure.

*Id.* at 48.

Thus, the first step for a reviewing court when analyzing whether a defendant's right to a public trial was violated is to determine if the trial was, in fact, closed to the public. *See id.* at 42 (applying the *Waller* test after determining that the prosecution moved to close the suppression proceedings and the trial court granted that motion). Once it is determined that the defendant's trial was closed to the public, the reviewing court decides whether that closure was proper. *See id.* at 48; *Presley*, 130 S. Ct. at 725 (citing *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510 (1984)).

---

[6]In *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980), the Supreme Court held that "a presumption of openness inheres in the very nature of a criminal trial under our system of justice." This presumption that criminal trials should be public, absent an overriding interest, is a reflection of this nation's fundamental distrust of secret trials and the belief that "justice must satisfy the appearance of justice." *In re Oliver*, 333 U.S. at 268; *see Offutt v. United States*, 348 U.S. 11, 14 (1954).

Because the findings by the trial court are the linchpin of the *Waller* test,[7] we address that requirement first. The findings must be on the record and specific. *See Waller*, 467 U.S. at 48 (requiring that a trial court make findings of fact sufficient to support the closure). Proper findings will identify the overriding interest and how that interest would be prejudiced, why the closure was no broader than necessary to protect that interest, and why no reasonable alternatives to closing the proceeding existed. *Presley*, 130 S. Ct. at 725. Generic findings will necessarily invalidate a closure because the findings must be "specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.* at 725 (citing *Press-Enterprise Co.*, 464 U.S. at 511); *Steadman*, 2012 WL 716010, at \*6.

For example, the Supreme Court has held that a reviewing court cannot "satisfy the deficiencies in the trial court's record" by making post hoc assertions inferring an overriding interest[8] and that it is reversible error when the record fails to show that a trial court considered all reasonable alternatives to closure. *Presley*, 130 S. Ct. at 725. We recently held that it was reversible error when a trial court considered "a number of

---

[7]A reviewing court cannot determine whether there was a closure and, if there was, whether that closure was proper, without findings that sufficiently articulate the circumstances of the case, a specific overriding interest and a concrete threat to that interest, why the closure was no broader than necessary to protect that interest, and that the trial court considered all reasonable alternatives to the closure. *See Presley*, 130 S. Ct. at 725.

[8]*Waller*, 467 U.S. at 49 n.8 (rejecting the Georgia Supreme Court's contention that the trial court balanced the interests at stake when it overruled petitioner's public-trial claim, but the record failed to support that assertion).

alternatives to closure" of voir dire proceedings because the trial court failed to consider *all* reasonable alternatives. *See Steadman*, 2012 WL 716010, at *6.

These exacting record requirements stem from the fact, at least in part, that the trial court itself may sua sponte close the proceedings, rather than relying on the State or the defendant to move to close the trial. *See, e.g.*, *Presley*, 130 S. Ct. at 722 (holding that the trial court impermissibly closed voir dire to family members because it failed to consider all reasonable alternatives to that closure); *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 598-99 (1982) (acting on its own motion, the trial court excluded members of the media from criminal trial proceedings); *Steadman*, 2012 WL 716010, at *1-2 (requiring the trial court to justify its sua sponte closure of voir dire proceedings); *Purvis v. Georgia*, 708 S.E.2d 283, 285 (Ga. 2011) (treating the trial court as the entity that closed the proceedings when it moved the defendant's trial to a jail and requiring the trial court to justify that closure).

### A. Was Appellant's trial closed?

Although one state has adopted a bright-line rule and concluded that "[prison] trials offend due process as being fundamentally unfair because of the inherent potential for prejudice arising therefrom," the rule from that case is based on specific facts.[9] And

---

[9]*See Ohio v. Lane*, 397 N.E.2d 1338, 1342-43 (Ohio 1979). In *Lane*, the defendant was charged with escaping from prison. *Id.* at 1339. The defendant elected to be tried by a jury and intended to argue that his escape was necessitated by duress due to the reprehensible conditions in the prison. *See id.* at 1341-42. To prove his defense, the defendant planned to call other inmates to the stand, but when those inmates were notified that the trial would take place in the prison where they were incarcerated, they chose not to testify. *Id.* at 1342.

other courts are split on this issue.[10]  The court of appeals addressed this point when it

held that

> [T]he authority to maintain a secure facility is not dispositive of [Appellant's] complaint because it does not account for the State's exercise of this authority. For example, if the State restricts unit visitors but not courtroom observers, no violation is shown. Conversely, if the State prevents the media or members of the public from attending trials, the right to a public trial is implicated.  Because the answer to this question turns on the State's actions, we cannot conclude, as a matter of law, that trials at prisons are or are not public trials. Instead, this issue must be addressed based upon the facts of each case.

*Lilly*, 337 S.W.3d at 379-80 (citation omitted, footnote omitted).  We agree with the court

of appeals that whether a particular defendant's trial was closed to the public should be

ascertained on a case-by-case basis after considering the totality of the evidence.[11]

---

[10]*See, e.g.*, *Washington v. Jaime*, 233 P.3d 554 (Wash. 2010) (convening court in a county jail is inherently prejudicial); *State v. Cavan*, 98 P.3d 381 (Or. 2004) (holding court in a prison is inherently prejudicial); *Utah v. Daniels*, 40 P.3d 611 (Utah 2002) (concluding, on the facts of the case, that a trial held in a prison courtroom was not unfair if the inmate-defendant was charged with aggravated murder while incarcerated); *Oregon v. Jackson*, 36 P.3d 500 (Or. 2001) (allowing infringement of a defendant's right to a public trial under the Oregon Constitution if a showing of "substantial need" is made, including holding court proceedings in a correctional facility); *Vescuso v. Virginia*, 360 S.E.2d 547 (Va. 1987) (holding that once a defendant proves that his trial is being held within a medium-security prison, the defendant has made a prima facie case under the Virginia Constitution that his trial was not open to the public); *Harper v. Mississippi*, 887 So. 2d 817, 824 (Miss. Ct. App. 2004) (removing trial to state prison violated the Sixth Amendment when the State offered evidence that the defendants had a history of violence and escape attempts); *Bright v. Alaska*, 875 P.2d 100 (Alaska Ct. App. 1994) (declining to adopt a bright-line rule that convening a criminal trial in a prison is per se prohibited under the Sixth Amendment).

[11]*Compare Harper*, 887 So. 2d at 826-27 (upholding trial convened in prison because it was shown that the inmate-defendants were charged with escape and had been habitually violent), *with Jackson*, 36 P.3d at 505-06 (holding that defendant's trial in prison violated the defendant's right to a public trial under the State constitution because the prosecution did not make a substantial showing of need when it put on evidence that it would have been more convenient to not transport witness-inmates to the county courthouse).

In the pretrial hearing, the TDCJ publication, Offender Rules and Regulations for Visitation, was offered into evidence and witnesses were called.  The testimony developed at that hearing showed that the Unit is located approximately 36 miles from the county seat.  To enter the Unit and attend a defendant's proceedings, a visiting person must first pass through a "highway gate" to enter the prison-grounds parking area.  Once past the highway gate, to get to the prison-chapel courthouse, a person must then pass through the "front gate"of the Unit, followed by two fences with razor wire, and a series of three locked metal doors.  At the front gate of the Unit, visitors are subjected to a physical pat-down search and must walk through a metal detector.  Before walking through the metal detector, people attempting to enter must remove their shoes and belt. If the metal detector is triggered, then that person will also be frisked with a "wand" (i.e., an individual-use metal detector) before he is allowed beyond the gate.  In addition to the practices described, the only people allowed to pass beyond either gate are required to show a valid state-employee identification card or they must have the on-duty warden's approval.  Conflicting testimony was given regarding whether a non-state employee not appearing on an inmate's visitor list could enter the Unit with the permission of the on-duty warden.  But, regardless of whether an individual attempting to enter the Unit is ultimately allowed entry, the prison keeps a record of the name and identification number (e.g., a person's driver's license number or TDCJ identification number) of anyone who attempts to enter the Unit and that identification is checked at each barrier.  Also, it was

the policy of the prison that unaccompanied minors and individuals released from confinement within the last two years were categorically prohibited from entering the Unit and that visitors could not bring cell phones or more than twenty dollars into the Unit. Other policies for excluding visitors could be enforced at the discretion of the guard stationed at any access point or the on-duty warden. For example, people attempting to attend could be denied entrance if they wore offensive clothing or sought admittance for an "improper purpose." At the conclusion of the pretrial hearing, the State noted that the docket for the chapel-courtroom was posted at the Jones County Courthouse a month prior to the pretrial hearing and that the docket reflected that the hearing would be at the Unit.

The court of appeals held that Appellant's trial was not closed to the public because there was no evidence that anyone was "dissuaded from attempting" to attend, and no one was actually prohibited from attending his trial. *Lilly*, 337 S.W.3d at 380. We disagree with this decision. When determining whether a defendant has proved that his trial was closed to the public, the focus is not on whether the defendant can show that someone was actually excluded. Rather, a reviewing court must look to the totality of the evidence and determine whether the trial court fulfilled its obligation "to take every reasonable measure to accommodate public attendance at criminal trials." *Presley*, 130 S. Ct. at 725.

While the admittance policies at the Unit were not tailored specifically to

Appellant or any other inmate, they were highly restrictive. And, even though many of the individual admittance policies in this case would not, standing alone, necessarily amount to a per se closure, the cumulative effect of the Unit's policies undermines our confidence that every reasonable measure was taken to accommodate public attendance at Appellant's trial. In sum, we hold that, under the facts of this case, Appellant met his burden to show that his trial was closed to the public and that the trial court failed "to take every reasonable measure to accommodate public attendance at criminal trials." *Presley*, 130 S. Ct. at 725.

## B. Who closed the proceedings?

Often a defendant's trial, or a portion thereof, is closed when a "party seek[s] to close" the trial,[12] the court grants that motion, and it then takes affirmative action to exclude the public or specific individuals from attending the proceedings. *See e.g.*, *Waller*, 467 U.S. at 48 (prosecution moved to close trial proceedings to protect sensitive wiretap information); *Richmond Newspapers, Inc.*, 448 U.S. at 559-60 (defendant requested that the proceedings be closed to the public); *Gannett Co.*, 443 U.S. at 375-76 (defendant asked for members of the media to be excluded from his trial due to pretrial publicity). In other cases, the trial court takes action on its own motion, and members of the public are excluded from the courtroom. *Presley*, 130 S. Ct. at 725 (trial court excluded family member of defendant from voir dire); *Globe Newspaper Co.*, 457 U.S. at

---

[12]*Waller*, 467 U.S. at 48.

598-99 (trial court excluded members of the media); *Steadman*, 2012 WL 716010, at *1-2 (trial court excluded family member of the defendant from voir dire).

Here, the district court convened Appellant's trial proceedings at the chapel-courtroom on its own motion pursuant to Section 24.012(e) of the Texas Government Code. Neither Appellant nor the prosecution asked to move the trial to the Unit. Although the trial court did not institute or control the admittance policies at the prison, the trial court is the entity that chose to convene the trial at the Unit.

We think that this situation is analogous to *Purvis*, in which the Georgia Supreme Court stated,

> While the trial court may not have deliberately intended that members of the public be prevented from attending the trial, it was the trial court that deliberately decided to hold appellant's trial in the county jail courtroom. By doing so, the trial court totally relinquished to jail officials the authority to control the public's access to the courtroom.

*Purvis*, 708 S.E.2d at 285. Moreover, we are mindful of the Supreme Court's statements that trial courts "are obligated to take every reasonable measure to accommodate public attendance at criminal trials" and that "[t]he public has a right to be present whether or not any party has asserted the right." *Presley*, 130 S. Ct. at 724-25. Thus, we hold that the trial court closed Appellant's trial to the public when it moved his trial to the Unit. And because the trial court was the "party" that closed the proceedings to the public, the trial court had the burden to justify that closure. Having held that Appellant satisfied his burden to show that his trial was closed to the public and that the trial court was

responsible for that closure, we now turn to whether that closure was justified under the *Waller* test. *See Waller*, 467 U.S. at 48.

### C. Was the closure justified?

In this case, the trial court held a pretrial hearing on Appellant's motion to transfer the proceedings during which witnesses were called and evidence was entered into the record. However, the trial court never made findings of fact to support its closure. Rather, at the conclusion of the hearing, the trial court summarily overruled all eleven motions (including Appellant's):

> All right. Thank you all for marshaling your evidence here today. I am going to rule at this time. The Court's ruling in regards to each one of these cases that have been called here today on - - in regards to the Motion to Transfer Proceeding to the Public Courthouse, that motion is denied.

As a reviewing court, we do not know why the trial court overruled all eleven motions. And although this Court often upholds the ruling of a trial court if it is correct under any theory of the law,[13] that is not the rule under a Sixth Amendment public-trial analysis. *See Waller*, 467 U.S. at 45 (citing *Press Enterprise Co.*, 464 U.S. at 510). Although there is sufficient evidence to determine that Appellant's trial was closed to the public, the pretrial hearing and the ruling of the trial court do not constitute the findings

---

[13]*See e.g.*, *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (reviewing courts should uphold the evidentiary ruling of a trial court "even if the trial judge gave the wrong reason for his correct ruling"); *State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011) (ruling of trial court at a suppression hearing should be upheld if the record reasonably supports it and the ruling is correct under any theory of law); *Mahaffey v. State*, 316 S.W.3d 633, 637 (Tex. Crim. App. 2010) (ruling of trial court should be upheld if correct under any theory of the law).

of facts necessary to justify closing Appellant's trial. *See Presley*, 130 S. Ct. at 725 (requiring findings of fact "specific enough that a reviewing court can determine whether the closure . . . was proper[] . . . "). We hold that because the trial court failed to make findings of fact that justified closing Appellant's trial, the closure was improper and, as a result, Appellant's Sixth Amendment right to a public trial was violated. *See id.*; *Waller*, 467 U.S. at 45.

## CONCLUSION

Appellant satisfied his burden to show that his trial was not open to the public, and the trial court failed to justify that closure when it did not make findings of fact. Because we hold that the closure of Appellant's proceedings was improper, we reverse the judgments of the court of appeals and the trial court, and we remand this case to the trial court for a new trial to be carried out in accordance with this opinion.

Hervey, J.

Delivered: April 18, 2012

Publish