PD-1427-13
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/13/2015 1:16:25 PM
Accepted 3/13/2015 2:54:31 PM
ABEL ACOSTA
CLERK

No. PD-1427-13

IN THE COURT OF CRIMINAL APPEALS
AT AUSTIN, TEXAS

**VANESSA CAMERON,** Appellant

**v.**

**THE STATE OF TEXAS,** Appellee

[ON REHEARING]

**CORRECTED APPELLANT'S/RESPONDENT'S RESPONSE
TO STATE'S REPLY BRIEF**

**\*Gerald H. Goldstein**
State Bar No. 08101000
**Donald H. Flanary, III**
State Bar No. 24045877
Goldstein, Goldstein, & Hilley
29th Floor Tower Life Building
San Antonio, Texas 78205
210-226-1463
210-226-8367 facsimile

**John T. Hunter**
State Bar No. 24077532
310 S. St. Mary's St.
Suite 1840 – Tower Life Bldg.
San Antonio, Texas 78205
210-399-8669
210-568-4927 facsimile

\*Lead Counsel

**TABLE OF CONTENTS**

Table of Authorities ...................................................................................iii

Mischaracterization of the Proceedings Below………….....……………………………4

Burden of Proving the Courtroom was Closed…………….……………………….8

Misinterpretation of *Steadman v. State*……………….…….....…………….…..10

Error Was Preserved……………….……………………………………………12

Certificate of Compliance ................................................................... 15

Certificate of Service.........................................................................16

# TABLE OF AUTHORITIES

**Cases**:

*Johnson v. United States*, 520 U.S. 461 (1997) ...................................................... 12

*Lilly v. State*, 35 S.W.3d 321 (Tex. Crim. App. 2012) ..................................... 3, 6, 8

*Ortiz v. State*, 93 S.W.3d 79 (Tex. Crim. App. 2002).............................................. 14

*Presley v. Georgia*, 130 S.Ct. 721 (2010)............................................................ 9, 12

*Rey v. State*, 897 S.W.2d 333 (Tex. Crim. App. 1995).............................................. 14

*Reyna v. State*, 128 S.W.3d 173 (Tex. Crim. App. 2005)........................................ 13

*Rovinsky v. McKaskle*, 722 F.2d 197 (5th Cir. 1984) .............................................. 13

*Steadman v. State*, 360 S.W.3d 499 (Tex. Crim. App. 2012) ................. 6, 10, 11, 12

*Waller v. Georgia*, 467 U.S. 39 (1984).................................................................... 6

*Walton v. Briley*, 361 F.3d 431 (7th Cir. 2004) ............................................... 12, 13

*United States v. Canady*, 126 F.3d 352 (2nd Cir. 1997)......................................... 12

**Rules and Statutes:**

Rule 33.1(a)(2) of the Texas Rules of Appellate Procedure............................ 13, 14

Rule 70.4 of the Texas Rules of Appellate Procedure ............................................. 2

Sixth Amendment to the United States Constitution ........................................... 1, 11

No. PD-1427-13

IN THE COURT OF CRIMINAL APPEALS
AT AUSTIN, TEXAS

**VANESSA CAMERON,** Appellant

**v.**

**THE STATE OF TEXAS,** Appellee

[ON REHEARING]

**CORRECTED APPELLANT'S/RESPONDENT'S RESPONSE
TO STATE'S REPLY BRIEF**

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

VANESSA CAMERON, Appellant/Respondent in the above-entitled and numbered cause, by and through her undersigned counsel, files her Response to State's Reply Brief:

PROCEDURAL HISTORY

On October 8, 2014 this Court affirmed the Fourth Court of Appeal's opinion in *Cameron v. State,* ___ S.W.3d ___, 2014 WL 4996290 (Tex. App.— San Antonio 2013). The 6-3 decision holds, in essence, that the record below "sufficiently shows that the *voir dire* proceedings were closed" and that same was not Constitutionally justified under the Sixth Amendment. On November 7, 2014, the State filed a Motion for Rehearing, complaining that the Court's majority

1

opinion "will be nearly impossible for trial judges to implement" and "places no burden of proof on the defense" to demonstrate that the trial court was not open to the public during *voir dire*. On January 28, 2015, this Court granted the State's Motion for Rehearing. This Brief on Rehearing is filed on behalf of Appellant/Respondent, Vanessa Cameron pursuant to Rule 70.4 of the Texas Rules of Appellate Procedure.

## INTRODUCTION

By this Brief Appellant seeks to address two basic issues central to, and dispositive of this rehearing. Namely: (1) mischaracterization of the facts, and (2) misinterpretation of the law.

1. THE FACTS. The State in their motion for and brief on Rehearing mischaracterizes the facts: Contrary to the State's Motion and Brief, the trial court below did *not* respond to defense counsel's objection that the public had been excluded from jury selection by advising defense counsel to "bring in anyone you want and we'll accommodate them." In fact, the trial court repeatedly responded, at least 11 times, that there was nowhere to put anyone in the courtroom during jury selection. What the State overlooks, and fails to mention, is that by the time the trial court advised defense counsel that he could bring in some family members and "*we will do our best* to accommodate them," the State had already asked individual jurors over 251 questions relating to critical legal and factual issues raised in this case.

2

Besides, as the majority here recognized, "the judge's own statements show that there was no room in the court for spectators; he all but conceded that no one was allowed to witness voir dire."

2. THE LAW. The State misinterprets the law, as well: The State continues to complain that Appellant "did not carry her burden of proving that "spectators were not allowed into the courtroom," citing *Lilly v. State*. The State misinterprets *Lilly*'s test for determining whether Appellant has met her burden of demonstrating that the jury selection proceedings were closed to the public. This Court in *Lilly* makes explicitly clear that the focus is *not,* as the State suggests, on whether the defendant demonstrated that someone was actually excluded, but *rather* whether the *trial court fulfilled its obligation* to take every reasonable measure to accommodate public attendance at those criminal proceedings. *See Lilly v. State,* 365 S.W.3d 321, 331 (Tex. Crim. App. 2012)

> "When **determining whether a defendant has proved that his trial was closed to the public**, *the* focus is not on whether the defendant can show that someone was actually excluded. Rather*, a reviewing court must* look to *the totality of the evidence and* determine whether the trial court fulfilled its obligation 'to take every reasonable measure to accommodate public attendance at criminal trials." (emphasis supplied).

Moreover, defense counsel's 7 separate objections to the closed courtroom[1] and his 7 separate requests for a ruling on same,[2] adequately preserved this issue for appeal.

---

[1] *See* RR Vol. 2 at 6, ln. 16; RR Vol. 2 at 4, ln. 22 – 25; RR Vol. 2 at 6, ln. 17; RR Vol. 2 at 7, ln. 12; RR Vol. 2 at 8, ln. 12; RR Vol. 2 at 8, ln. 22; RR Vol. 2 at 10, ln. 1.
[2] *See* RR Vol. 2 at 6, ln. 7; RR Vol. 2 at 6, ln. 15; RR Vol. 2 at 7, ln. 12; RR Vol. 2 at 8, ln. 10; RR Vol. 2 at 9, ln. 4; RR Vol. 2 at 10, ln. 1; and RR Vol. 2 at 10, ln. 11. Not to mention the trial court's 8 separate refusals to rule on those objection. RR Vol.2, at 6, ln. 8; RR Vol. 2, at 6,

MISCHARACTERIZATION OF THE PROCEEDINGS BELOW

The State suggests in its Brief that their Motion for Rehearing "did not mischaracterize either the record or this Court's majority opinion." *See* State's Brief on Rehearing, at p. 6. With all due respect, the misrepresentation by the State in both their Motion for and Brief on Rehearing lies in their continued mischaracterization of the proceedings below, stating that in response to defense counsel's repeated objections that "the public has been excluded" from jury selection,[3] the trial court said "Defense, the courtroom is open, bring in anyone you want and we'll accommodate them." State's Motion, at p. 2 and State's Brief on Rehearing, at p. 5.

What the State completely ignores and fails to even mention is that in actual fact, the trial court 's response to Defense Counsel's objections was to repeat some ten separate times on the record that: "I'm looking around this court and ***I'm telling you, I don't see where we could put them***" (emphasis supplied) RR Vol. 2, at 9, ln. 13; "***I don't see any available chairs as I'm looking around the***

ln.12; RR Vol. 2, at 6, ln. 17; RR Vol. 6, at 6, 22; RR Vol. 2, at 8, ln. 15; RR Vol. 2, at 8, ln. 22; RR Vol. 2, at 9, ln. 7; RR Vol. 2, at 10, ln. 19.

[3] RR Vol. 2 at 6, ln. 16. *See also:* RR Vol. 2 at 4, ln. 22 – 5, ln.6 ["I noticed prior to the Court calling the case for trial, the bailiff ushered out or secluded the general public, to include family and friends of my client. I would ask that family and friends be allowed to be present here in the courtroom during the voir dire. They're excluded and I if they're excluded, I would just put for the record an objection to the 6th Amendment of the U.S. Constitution and Article 1, Section 10 of the Texas Constitution since she does have a right to the public trial"]; RR Vol. 2, at 6, ln. 17 ["THE COURT: What is it that you're objecting to? MR ESPARZA: That the public has been excluded…"]; RR Vol. 2, at 7, ln. 12 ["I just wanted an alternative, Judge."]; RR Vol. 2, at 8, ln. 12 ["THE COURT: Your objection is that people have been excluded from the Court? MR. ESPARZA: Yes, sir… The absence of the public from jury selection."]; RR Vol. 2, at 8, ln.22 ["MR. ESPARZA: …I'm saying, prior to you taking the bench and calling the case for court… the bailiff excluded all of the public from this courtroom for jury selection."]; RR Vol. 2, at 10, ln. 1 ["THE COURT:… So what exactly is your objection? MR. ESPARZA: Just to the exclusion that's already occurred, Judge. I was just asking how we could remedy it. I bring it to the Court's attention. If the Court does not want to rule on my objection, I understand."].

*courtroom where anybody could sit*. I just don't know how we could accommodate." (emphasis supplied) RR Vol. 2, at 9, ln. 23; "*I'm looking around the courtroom, and . . . I notice for the record that every single chair that we have available . . .* for other people [than prospective jurors] have been removed and placed in the jury area because that is the only way we can accommodate the number of jurors in this courtroom . . . *I don't see any room whatsoever where anybody else would be able to sit and observe*." (emphasis supplied) RR Vol. 2, at 5, ln. 8; "*We just don't know where to put them*, Mr. Esparza." (emphasis supplied) RR Vol. 2, at 6, ln. 4; "I'm just telling you, where can we put them? *Where are we going to put them*?" (emphasis supplied) RR Vol. 2, at 6, ln. 8; "All I'm saying is, *where do you suggest we put them*." RR Vol. 2, at 6, ln. 23; "I mean, I don't know what else we could do. The courtroom's going to be absolutely stuffed with venire panel members. *I don't know what we're going to do*." RR Vol. 2, at 8, ln. 6; "THE COURT: I'm well aware of the rights this individual defendant has to have an open court, however, *I'm looking around this court and I'm telling you, I don't see where we could put them*." (emphasis supplied) RR Vol. 2, at 9, ln. 11; "*I just don't know where to put them*." (emphasis supplied) RR Vol. 2, at 10, ln. 16; "*Tell me where to put them* and we'll put members of her family." (emphasis supplied) RR Vol. 2, at 10, ln. 20.

This Honorable Court's majority recognized that "the judge's own statements show that there was no room in the court for spectators; he all but conceded that no one was allowed to witness *voir dire*." *Cameron v. State,* Slip op. at p. 8. Nevertheless, as if repeating their mischaracterization would make it true, the State rephrases same in question form, stating in their Motion for Rehearing:

> "If the defense objects that the courtroom is closed to the public, *and the court responds 'No it isn't. Bring in anyone you want*,' the record will not show that any spectators actually entered" (emphasis supplied) State's Motion for Rehearing, at p. 6

As set out above, this was *not* the trial court's response to defense counsel's objections. A more accurate paraphrase of the trial court's repeated response would be that there was no room in the courtroom for anyone to observe jury selection, asking defense counsel to solve the court's problem.

It was not until ***after*** a significant portion of jury selection had transpired, (some 83 pages of transcript), that the trial court finally tells defense counsel that *when* he begins his general voir dire, he can bring in some family members and "*we will do our best* to accommodate them in areas around the gallery," RR Vol. 2, at 83, 14. [4]

More importantly, that statement came only ***after*** the jury had been shuffled, RR Vol. 2, at 4; ***after*** the trial court had completed it's general voir dire, RR Vol. 2, at 17; ***after*** the trial court made findings attempting to justify the closure of a courtroom under the Supreme Court's *Waller* opinion[5]; and, most importantly, only

---

[4] A suggested procedure that both courtroom bailiffs indicated this judge had utilized on previous occasions to solve this very problem.

> "[F]or many trials we have placed chairs along walls to make seating available for the public and the defendant's family and friends." *See* Affidavits of both Bailiffs, Joe Gaska, at CR 288 and Richard Villereal at CR 290.

Despite the fact that the trial court had done so successfully in the past, the judge never even suggests that he would consider such an alternative until defense counsel had begun his general voir dire, *after* the State had completed theirs. As this Court noted in *Lilly v. State,* 365 S.W.3d 321, 329 (Tex. Crim. App. 2012,), citing *Steadman v. State,* 360 S.W.3d 499, 510 (Tex. Crim. App. 2012).

> "We recently held that it was reversible error when a trial court considered 'a number of alternatives to closure' of voir dire proceedings because the trial court failed to consider *all* reasonable alternatives." (emphasis in the original).

[5] *See Waller v. Georgia,* 467 U.S. 39 (1984). As this Court's majority pointed out, "Were the *voir dire* proceedings actually open to the public, the trial judge would not have needed to cite space limitations and safety concerns as reasons to keep the public out. The trial court stated that he could not 'accommodate' the appellant's friends and family and that 'every single chair' was being used by the venire panel… He then made findings in accordance with the Supreme Court's *Waller* opinion. These findings track the test for whether or not a closure was justified. Again, were the *voir dire* proceedings actually open, there would be no need for a *Waller* analysis." *Cameron v. State,* Slip op. at p. 8.

*after* the State had asked individual panel members some 187 questions, on topics ranging from what book a juror was reading, RR Vol. 2, at p. 43, what type of law a particular juror practiced, RR Vol. 2, at 44, what movies jurors watched, RR Vol. 2, at 46, the definition of "knowing and intentional," RR Vol. 2, at 50-1, legal defenses, RR Vol. 2, at 52, the state of the defendant's mind, RR Vol. 2, at 54, types of lesser included offenses, RR Vol. 2, at 57, the definition of "intent to cause serious bodily injury," RR Vol. 2, at 60, the fact that the jury would be deciding only guilt or innocence and not punishment, RR Vol. 2, at 62, definition of bias and prejudice, RR Vol. 2, at 64, the relevance of "motive," RR Vol. 2, at 66, types of proof, RR Vol. 2, at 67, singling out jurors who indicated that they would be unable to "sit in judgment" on another individual, RR Vol. 2, at 74, or were unable to judge a witnesses' credibility, RR Vol. 2, at 74, to inquiring into a particular juror's religion, RR Vol. 2, at 75.

Moreover, the trial court did *not* say, as the State continues to misrepresent, that "the courtroom is open, bring in anyone you want and we'll accommodate them."[6]  What the trial court actually said to defense counsel, was that "we **will do our best** to accommodate them in areas around the gallery," and even then, not until you "**begin** your general voir dire." RR Vol. 2, at 83, ln. 14.  And that did not occur for another 37 pages of transcript, *after* one juror had been excused,[7] and *after* the State had asked some 64 additional questions to individual jurors on topics ranging from the "law of parties," RR Vol. 2, at 85, aiding and soliciting an offense, RR Vol. 2, at 86, "duty to act," RR Vol. 2, at 90, legal duty to protect one's spouse, RR Vol. 2, at 9, defense of "duress," RR Vol. 2, at 92, self defense, RR Vol. 2, at 93, "imminent threat of deadly force," RR Vol. 2, at 95, "unlawful

---

[6] *See* States Motion for Rehearing, at p. 2 and Brief on Rehearing, at p. 5.
[7] Juror number 25, Ms. Paz Marin was excused by the trial court, without objection at RR Vol. 2, at 81.

use of deadly force," RR Vol. 2, at 96, defense of third persons, RR Vol. 2, at 98, defense of "protection of property," RR Vol. 2, at 98, requirement to produce a murder weapon, RR Vol. 2, at 101, expectation of fingerprint or DNA evidence, RR Vol. 2, at 102, live testimony versus scientific or circumstantial evidence, RR Vol. 2, at 102-3, reliance on testimony from cooperating co-conspirators, RR Vol. 2, at 105 – 6, reliance upon law enforcement testimony, RR Vol. 2, at 109 – 10, lack of motive, RR Vol. 2, at 112 – 15, need for a "time of death," RR Vol. 2, at 117, jurisdiction, RR Vol. 2, at 117; right to a jury trial, RR Vol. 2, at 118, defendant's right to remain silent, RR Vol. 2, at 118 – 19, to the definition of "proof beyond a reasonable doubt," RR Vol. 2, at 120.

All-in-all, by the time the trial court advises defense counsel that he may finally bring family members into the courtroom to observe the jury selection process, the State had asked over 251 questions and received responses from prospective jurors, relating to critical legal and factual issues raised in this case.

## BURDEN OF PROVING THE COURTROOM WAS CLOSED
### [MISINTERPRETATION OF *Lilly v. State*]

The State continues to complain "that the defense did not carry its burden to show that the courtroom was closed," noting that Appellant had not shown "whether any spectators entered the courtroom." State's Brief on Rehearing, at p. 8. However, the State's reliance on *Lilly* is misplaced. In fact, this Court makes clear in *Lilly* that the burden is *not* on the defendant to demonstrate that someone was actually excluded, but *rather* to demonstrate that the trial court failed to fulfill its obligation to accommodate the public. *See Lilly v. State,* 365 S.W.3d, at 331.

> "When determining whether a defendant has proved that his trial was closed to the public, **the focus is not on whether the defendant can show that someone was actually excluded**. Rather, *a reviewing court must* look to *the totality of the evidence and* determine whether

8

the trial court fulfilled its obligation 'to take every reasonable measure to accommodate public attendance at criminal trials." (emphasis supplied).

Thus it is clear that the State has misplaced the focus of this Court's inquiry. It is not whether the defendant has met any burden to show that anyone was excluded from jury selection, *rather* the inquiry is whether the trial court has fulfilled its obligation to take every reasonable measure to accommodate public attendance. A contrary rule "permits the closure of voir dire *in every criminal case* conducted in this courtroom whenever the trial judge decides, for whatever reason, that he or she would prefer to fill the courtroom with potential jurors rather than spectators." *Presley v. Georgia:* 130 S.Ct. 721, 725 (2010) (emphasis in original).

As to that inquiry, there can be little doubt, and asking defense counsel to find room for anyone to observe these proceedings, or waiting 120 pages of transcript and 251 questions of potential jurors, before even attempting to suggest an alternative, does not satisfy the trial court's obligation. On these facts it is clear that Appellant has met her burden of demonstrating that the trial court did not fulfill its obligation to accommodate public attendance.

As set out more fully above, in response to defense counsel's objections that the public had been excluded from observing jury selection, the trial court repeated, some ten separate times on the record that there was nowhere in the courtroom for anyone other than prospective jurors to observe the selection process. *See* RR Vol. 2, at 9, ln. 13; RR Vol. 2, at 9, ln. 23; RR Vol. 2, at 5, ln. 8; RR Vol. 2, at 6, ln. 4; RR Vol. 2, at 6, ln. 8; RR Vol. 2, at 6, ln. 23; RR Vol. 2, at 8, ln. 6; RR Vol. 2, at 9, ln. 11; and RR Vol. 2, at 10, ln. 16, repeatedly asking defense counsel to "[t]ell me where to put them and we'll put members of her family." RR Vol. 2, at 10, ln. 20.

9

As this Honorable Court's majority recognized, "the judge's own statements show that there was no room in the court for spectators; he all but conceded that no one was allowed to witness *voir dire*." *Cameron v. State,* Slip op. at p. 8.

## MISINTERPRETATION OF *STEADMAN v. STATE*

The State also suggests in their brief that when the trial court below told defense counsel (some 120 pages and over half a day into the jury selection process), that he could bring in some family members and "we will do our best to accommodate them," that this "was exactly the solution this Court suggested in *Steadman v. State,* allowing a defendant's family members to sit in the courtroom as seats opened up because of excused venire members." *See* State's Brief on Rehearing, at p. 5, quoting a footnote in *Steadman v. State,* 360 S.W.3d 499, 510, n. 37 (Tex. Crim. App. 2012). *See* State's Brief on Rehearing, at p. 5, quoting a footnote in *Steadman v. State,* 360 S.W.3d 499, 510, n. 37 (Tex. Crim. App. 2012).

> "Moreover, the record in this case shows that, by the time the parties exercised their peremptory strikes and the jury was called and seated, at least five veniremembers had been dismissed, either on challenge for cause or by agreement of the parties. This would have provided a sufficient number of seats in the gallery from which the appellant's family members could have observed the proceedings . . ." *See* State's Brief on Rehearing, at pp. 5 – 6.

This misunderstanding of what the Court in *Steadman* was speaking to may be the result of having omitted the remainder of that quoted sentence and overlooked the body of the case. The critical omitted portion of that quote is highlighted below:

> "Moreover, the record in this case shows that, by the time the parties exercised their peremptory strikes and the jury was called and seated, at least five veniremembers had been dismissed, either on challenge for cause or by agreement of the parties. This would have provided a sufficient number of seats in the gallery from which the appellant's

10

family members could have observed the proceedings *for the brief period it took the trial court (the record reflects it was a mere two minutes) to summon the jurors to the jury box and excuse the balance of the jury panel.*" *Steadman v. State,* 360 S.W.3d, at 510, n. 37.

As the body of the opinion makes clear, this Court was not there suggesting that allowing the defendant's family members to come sit in the courtroom *only* when seats opened up because of excused venire members would provide any "solution" to the courtroom closure. In fact, just the opposite. The Court in *Steadman* was confronted with a trial court that had excluded the public from jury selection, despite the fact that the jury box remained empty[8] during the entire jury selection process. The Court in Steadman held that this situation was Constitutionally untenable, recognizing that an obvious alternative would be to put members of the public in the jury box. Footnote 37 was merely addressing the Court's hypothetical concern that "the family members would eventually have to be 'moved when the selected jury was seated.'" The obvious solution was "relocating some veniremembers to he jury box and placing the family members in the gallery seats thus vacated, at least until that time arrives." *See Steadman v. State*, 360 S.W.3d, at 510.

This Court was there speaking only to the brief period of time family members, who had been allowed to view all of the jury selection process from the jury box, "would have to be moved when the selected jury was seated." *Steadman v. State,* 360 S.W.3d, at 510 ("a mere two minutes" [*See* fn. 37]). More importantly, this Court makes clear in *Steadman* that "for the trial court to prevent the family members from observing jury selection—at least up until the point of the actual seating of the jury—*clearly violated the appellant's Sixth Amendment*

---

[8] Save a D.A.'s investigator.

11

***right to a public trial.***" (emphasis supplied) *Steadman v. State,* 360 S.W.3d, at 510.

## ERROR WAS PRESERVED

Lastly, despite defense counsel's 10 requests for the trial court to rule on his 11 separate objections to the closure of the courtroom during jury selection, the State claims that Appellant has not preserved that error for this appeal.

The State argues that trial counsel failed to obtain a ruling on his objection to the fact that the public was unable to attend jury selection. However, the United States Supreme Court suggested in *Presley* that the defendant may not even need to object to exclusion of the public from jury selection in a criminal prosecution, in order to preserve the issue for review. *See Presley v. Georgia,* 558 U.S. 209, 214 (2010) ("The public has a right to be present whether or not any party has asserted the right"); *Johnson v. United States,* 520 U.S. 461, 468-69 (1997) (holding that denial of a public trial is a structural error). Several Circuit Courts of Appeal have endorsed this view:

> ***A waiver of a constitutional right must be voluntary, knowing and intelligent, that is, the act of waiver must be shown to have been done with awareness of its consequences*** . . . In examining a purported waiver of the right to public trial, ***we draw all reasonable presumptions against the loss of such a right*** . . . In this case, ***the government claims that*** because [the defendant] failed to object to the district court's statement that it intended to mail the verdict[, thereby denying the defendant the reading of the verdict in open court and thus a public trial, ***the defendant] waived his public trial right. We disagree.***

*United States v. Canady,* 126 F.3d 352, 359 (2nd Cir. 1997). Similarly, in *Walton v. Briley,* the Seventh Circuit Court of Appeals concluded that a lawyers failure to object to the court's decision to deny the defendant a public trial by holding trial at 10:30 in the evening did not waive the error on appeal. *See also Walton v. Briley,*

12

361 F.3d 431, 433 (7th Cir. 2004). The Fifth Circuit Court of Appeals has similarly held that:

> Failure to object to a private hearing, however, does not waive the right to be tried publicly when the futility of the objection is apparent by its previous rejection. We cannot construe failure to continue to object in the face of evident futility as the waiver of a previously asserted right.

*Rovinsky v. McKaskle,* 722 F.2d 197, 199 – 200 (5th Cir. 1984).

Here*,* Cameron's counsel objected loudly and often. Counsel's efforts to preserve the error likely went *beyond* the realm of futility in light of the trial court's remarks, and nothing in the record should be construed to find that Cameron knowingly and voluntarily waived her right to complain of the public's exclusion from a critical stage of her trial.

Texas Rule of Appellate Procedure 33.1(a)(2) requires an attorney to object, and requires him to pursue an adverse ruling either explicitly or *implicitly.* Here, the trial court continued to refuse to rule on defense counsel's persistent objections, despite repeated requests for a ruling. The State characterizes Rule 33.1 as a "'judge-protecting rule[9],'" but it is more appropriate to think of the rule as a double-edged sword:

> [T]he State says error was not preserved because the trial court's ruling on the motion does not appear in the record. While we require that a defendant's objections be specific enough to effectively communicate his complaint to the court, ***we are less stringent in our requirements of the trial court's ruling on an objection.*** A court's ruling on an objection can be impliedly rather than expressly made. . . A trial court's ruling on a matter need not be expressly stated if its actions or other statements otherwise unquestionably indicate a ruling.

---

[9] State's Brief on Rehearing at 10 (quoting *Reyna v. State,* 168 S.W.3d 173, 177 (Tex. Crim. App. 2005).

*Rey v. State,* 897 S.W.2d 333, 336 (Tex. Crim. App. 1995) (internal citations omitted--emphasis supplied); *see also Ortiz v. State,* 93 S.W. 3d 79, 90 (Tex. Crim. App. 2002).

While it is important to protect the judges of this State from traps in the record as the result of cryptic objections or remarks from the defense, it is equally important to protect the defendant from trial courts who may manufacture procedural default by cryptically responding to expressly articulated objections. In short, it should be a jurisprudential touchstone to discourage disingenuousness.

Here, defense counsel's objections were succinct and clear. On several occasions, the trial court even repeats same, almost verbatim:

> THE COURT: Your objection is that people have been excluded from the court?

RR Vol. 2 at 8, ln. 12. To construe such persistent attempts to preserve one's record as a waiver of same would undermine both the letter and spirit of Rule 33.1 of the Texas Rule of Appellate Procedure and this Honorable Court's longstanding precedent.

## PRAYER

Accordingly, this Honorable Court should affirm the Fourth Court of Appeals and/or dismiss the rehearing as improvidently granted.

Respectfully submitted

/S/ **GERALD H. GOLDSTEIN**
**Gerald H. Goldstein**
State Bar No. 08101000
**Donald H. Flanary, III**
State Bar No. 24045877

14

Goldstein, Goldstein, & Hilley
29th Floor Tower Life Building
San Antonio, Texas 78205
210-226-1463
210-226-8367 facsimile

**John T. Hunter**
State Bar No. 24077532
310 S. St. Mary's St.
Suite 1840 – Tower Life Bldg.
San Antonio, Texas 78205
210-399-8669
210-568-4927 facsimile


By: /s/ Gerald H. Goldstein
    GERALD H. GOLDSTEIN
    Attorney for Vanessa Cameron


## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document does comply with the word-count limitations of Tex. R. App. P. 9.4(e) because it contains 4,114 words, excluding any parts exempted by Tex. R. App. P. 9.4(e).

By: /s/ Gerald H. Goldstein
    GERALD H. GOLDSTEIN

## CERTIFICATE OF SERVICE

This is to certify that on March 13, 2015, a true and correct copy of the above and foregoing document was served on Jay Brandon, Assistant District Attorney at the Bexar County District Attorney's Office, by electronic mail to jay.brandon@bexar.org.

 /s/ Gerald H. Goldstein
Gerald H. Goldstein
