[No. C032080. Third Dist. Sept. 12, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT ENGLAND, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III and IV.

## Counsel

J. Peter Axelrod, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, W. Scott Thorpe and Troy L. Nunley, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**HULL, J.**—A jury convicted defendant Robert England of two counts of battery by an inmate on a nonconfined person (Pen. Code, § 4501.5; all further statutory references are to the Penal Code unless otherwise indicated), one count of possession by an inmate of a sharp instrument (§ 4502, subd. (a)), and one count of resisting executive officers by force or violence (§ 69). The jury also found charged enhancements to be true. (§§ 667, subds. (b)-(i), 667.5, subd. (b).)

Sentenced to an aggregate prison term of 26 years to life consecutive to the term then being served, defendant appeals, asserting: (1) trial should not have been held on prison grounds, (2) the court gave incomplete instructions on the elements of section 69, (3) there was insufficient evidence to support the convictions for violating section 4501.5 because the prosecution failed to establish that the victims were not confined persons, and (4) the court failed to make the requisite findings on the charged prior convictions. We affirm.

### Facts and Procedural History

Defendant was an inmate at High Desert State Prison. Correctional officers discovered wire missing from a cyclone fence and began a search of inmates' cells. Defendant and his cellmate refused to cooperate. After several warnings and repeated use of pepper spray, correctional officers began a forcible extraction procedure.

When teams of officers entered the cell and tried to subdue defendant, defendant resisted and stabbed two correctional officers with a sharp instrument.

At trial, the officers described defendant's attack and their efforts to restrain him. The jury convicted defendant of two counts of battery by an

inmate against nonconfined persons,[1] one count of forcibly resisting executive officers, and one count of possession by an inmate of a sharp instrument. The jury also found true various enhancements relating to prior felony convictions and a prior prison term.

The court sentenced defendant to an aggregate prison term of 26 years to life, to run consecutively to the term defendant was then serving.

This appeal followed.

### DISCUSSION

### I

### *Trial on Prison Grounds*

Over defendant's objections, trial was held in a courtroom located on the grounds of High Desert State Prison. On appeal, defendant reiterates many of his concerns. We address each in turn.

### A. *Alleged Violation of California Standards of Judicial Administration*

■ Defendant contends holding his trial on prison grounds violated the California Standards of Judicial Administration (Standards). We disagree.

Section 7.5 of the Standards provides:

"(a) Facilities used regularly for judicial proceedings should not be located on the grounds of or immediately adjacent to a state penal institution unless the location, design and setting of the court facility provide adequate protection against the possible adverse influence that the prison facilities and activities might have upon the fairness of judicial proceedings. In determining whether adequate protection is provided, the following factors should be considered: (1) the physical and visual remoteness of the facility from the facilities and activities of the prison; (2) the location and appearance of the court facility with respect to the adjacent public areas through which jurors and witnesses would normally travel in going to and from the court; (3) the accessibility of the facility to the press and the general public; and (4) any other factors that might affect the fairness of the judicial proceedings.

"(b) Unless the location, design and setting of the facility for conducting court sessions meet the criteria established in subdivision (a): (1) court

---

[1]The jury acquitted defendant of an identical charge involving a third correctional officer.

sessions should not be conducted in or immediately adjacent to a state penal institution except for compelling reasons of safety or convenience of the court, and (2) *should not be conducted at such a location in any event when the trial is by jury*, or when the testimony of witnesses who are neither inmates nor employees of the institution will be required." (Italics added.)

Defendant points to section 7.5(b)(2) of the Standards to assert that jury trials cannot "in any event" be conducted in or immediately adjacent to a state prison. Defendant's argument ignores the introductory language to subdivision (b).

By beginning with the words "[*u*]*nless* the location, design and setting of the facility for conducting court sessions meet the criteria established in subdivision (a)," (italics added) subdivision (b) of section 7.5 of the Standards clarifies that its provisions come into play only if the earlier established criteria are not met. In other words, if specified criteria are not met and the prison setting might adversely affect the fairness of judicial proceedings, a court trial can be held on state prison grounds only for compelling reasons of safety or convenience of the court. Only a court trial is authorized in this situation. Under subdivision (b)(2) of section 7.5 of the Standards, even if compelling reasons are demonstrated, a jury trial should not be held on prison grounds.

Defendant errs in interpreting subdivision (b) of section 7.5 of the Standards to mean that jury trials on prison grounds are inappropriate in all circumstances. That is not what the Standards provide. The introductory language to subdivision (b) compels the conclusion that if the criteria set forth in subdivision (a) are met, thereby ensuring the fairness of judicial proceedings, subdivision (b) is inapplicable and there is no bar to holding jury trials on prison grounds.[2]

Thus, the critical question is whether the criteria in subdivision (a) of section 7.5 of the Standards were met here. We conclude they were.

The courtroom at High Desert State Prison was physically and visually remote from the facilities and activities of the prison (Stds., § 7.5(a)(1)), as the courtroom was located in a building outside the prison wires. The only inmates that jurors might have seen were those working in gardens around the building.

---

[2]In fact, subdivision (a)(2) of section 7.5 of the Standards specifically takes juror concerns into account by listing as a criterion "the location and appearance of the court facility with respect to the adjacent public areas through which jurors and witnesses would normally travel in going to and from the court."

Juror travel to the courthouse did not present any problems. (Stds., § 7.5(a)(2).) Again, the courtroom was not within the actual confines of the prison, and jurors could drive directly to the courtroom.

The courtroom was accessible to the press and general public (Stds., § 7.5(a)(3)) although, as the court explained, visitors would have to identify themselves at the gate.[3] This security measure does not make the courtroom inaccessible.

Finally, the court took additional measures to ensure the fairness of proceedings (Stds., § 7.5(a)(4)) by asking prospective jurors whether they would be adversely affected by a trial held on prison grounds. As discussed in greater length later in this opinion, the one juror who expressed serious reservations was excused from service.

In short, consideration of the factors enumerated in section 7.5, subdivision (a), of the Standards leads to the conclusion that trial at the prison facilities did not adversely affect the fairness of the judicial proceedings. Consequently, there was no bar to holding a jury trial on the prison grounds, and no violation of the Standards.

B. *Alleged Violation of Right to Public Trial*

Defendant contends holding his trial on prison grounds violated his constitutional right to a public trial (U.S. Const., 6th & 14th Amends.; Cal. Const. art. I, § 15; see also § 686, subd. 1) by making it more difficult for the public to attend and by limiting the access of felons to the courtroom. Neither claim is well founded.

"Under normal conditions a public trial is one which is open to the general public at all times. This right of attendance may be curtailed under special circumstances without infringement of the constitutional right but it cannot be denied altogether nor can it be restricted except in cases of necessity." (*People v. Frutos* (1984) 158 Cal.App.3d 979, 987 [205 Cal.Rptr. 204].)

In this case, the court did not close the trial to the public. Defendant argues only that it was more difficult for the public to attend because some people would be dissuaded from attending a proceeding held on prison grounds and some would resent having to identify themselves to prison officials to gain access to the grounds. Neither concern impacts defendant's right to a public trial.

---

[3]Defendant's claim regarding potential access problems for felons who might want to attend the trial as members of the public is discussed later in this opinion.

As noted previously, because the courtroom was located outside the actual prison wires, there was little possibility that the public might come into contact with inmates or otherwise be exposed to prison activities. That some people might not want to go to a courtroom located on prison grounds is irrelevant to determining whether a trial was public. Other individuals might not want to go downtown to an urban courtroom, while others might not want to drive long distances in rural areas to attend a courtroom located in another town. These individual predilections do not make what is otherwise a public trial any less public.

Nor does the fact that individuals have to identify themselves before entering prison grounds unlawfully curtail defendant's right to a public trial. Far more stringent security procedures have been permitted in other cases. For example, in *People v. Remiro* (1979) 89 Cal.App.3d 809 [153 Cal.Rptr. 89, 2 A.L.R.4th 1135], this court found the photographing, searching, and, for a time, fingerprinting of members of the public seeking entry to defendant's trial did not violate the defendant's right to a public trial. (*Id.* at pp. 847-848.) We noted there was "no wholesale exclusion of the public from the trial" and concluded these precautions were "eminently reasonable" given the possible security risks. (*Id.* at p. 848.)

Here, there was no general exclusion of the public from the trial, and the security measures imposed—requiring attendees to identify themselves to gain access to prison grounds—were minimal and unintrusive. Defendant's right to a public trial was not improperly restricted.

Finally, defendant contends his constitutional right to a public trial was violated because holding the trial on prison grounds meant that felons could attend the trial only with the permission of the warden (§ 4571).[4] Defendant's claim is entirely speculative, as he made no showing that any felons were in fact denied access to the trial. However, the security risks posed by felons returning to a state prison are clear, and reasonable measures to limit those risks may be taken. There was no violation of defendant's right to public trial. (See *People v. Woodward* (1992) 4 Cal.4th 376, 385 [14 Cal.Rptr.2d 434, 841 P.2d 954]; *People v. Remiro, supra*, 89 Cal.App.3d at pp. 847-848.)

C. *Alleged Violation of Separation of Powers*

Citing section 4571, defendant contends holding his trial on prison grounds violated separation of powers provisions by vesting the ultimate

---

[4]Section 4571 provides: "Every person who, having been previously convicted of a felony and confined in any State prison in this State, without the consent of the warden or other officer in charge of any State prison . . . comes upon the grounds of any such institution, or lands belonging or adjacent thereto, is guilty of a felony."

decision as to whether a felon could attend the trial in the hands of the warden rather than the trial judge, who has the authority to control judicial proceedings. (See Code Civ. Proc., § 128, subd. (a).)

Defendant presented no evidence that any felons were denied access to his trial, or that the prison warden otherwise interfered with anyone attending the trial. Without such a showing, defendant's claim is not ripe for review.

■ "The ripeness requirement, a branch of the doctrine of justiciability, prevents courts from issuing purely advisory opinions. [Citation.] It is rooted in the fundamental concept that the proper role of the judiciary does not extend to the resolution of abstract differences of legal opinion. . . . [T]he ripeness doctrine is primarily bottomed on the recognition that judicial decisionmaking is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy." (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170 [188 Cal.Rptr. 104, 655 P.2d 306].)

Defendant's theoretical claim of a violation of separation of powers is not ripe for adjudication.[5]

D. *Alleged Easing of Burden of Proof*

■ Defendant contends holding trial on prison grounds eased the prosecution's burden of proving defendant was confined, a requisite element of the charged battery and weapons offenses. (§§ 4501.5, 4502.) Defendant's claim is meritless.

The People assert defendant is estopped from making this claim because he stipulated that he was confined at High Desert State Prison at the time of the charged offenses. Defendant counters estoppel should not apply because this stipulation was entered into only after the court decided to hold the trial on the prison grounds.

Even without this stipulation, the evidence unequivocally established defendant was confined at High Desert State Prison, and his status as an inmate could not reasonably have been contested. Five correctional officers identified defendant as the inmate they extracted from cell 124. Furthermore, the court instructed the jury it must find defendant was confined in order to convict defendant of the battery and weapons charges.

Holding trial on prison grounds did not reduce the prosecutor's burden in the slightest.

---

[5]Moreover, defendant has not demonstrated how he was prejudiced by any such violation.

### E. *Allegation That Trial on Prison Grounds Was the Functional Equivalent of Shackling*

Defendant contends holding his trial on prison grounds was the functional equivalent of shackling him in the courtroom because it was likely to lead the jurors to infer that defendant was a violent person disposed to committing the type of crimes alleged. Defendant's comparison is unconvincing.

In *People v. Duran* (1976) 16 Cal.3d 282 [127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1], the California Supreme Court noted that restraining a defendant may prejudice jurors, affront human dignity, cause disrespect for the judicial system, and affect a defendant's decision to take the stand. (*Id.* at p. 290.)

None of these concerns is present here. As we have already discussed at length, the trial location met the criteria specified under section 7.5 of the Standards and ensured the fairness of judicial proceedings. The trial site did not prejudice the jury, affront anyone's dignity, cause disrespect for the judicial system, or impact defendant's decisions at trial in any way. There simply is no comparison to be made between shackling a defendant and holding trial on prison grounds in accordance with established standards.

### F. *Alleged Impact on Jury Selection*

 During jury selection, the court excused Prospective Juror Lee Graves, a retired correctional officer from High Desert State Prison. Graves stated he had high blood pressure and adamantly asserted he was unwilling to return to the prison for this trial.[6] Defendant asserts the trial location thereby adversely impacted jury selection and violated his constitutional rights. Again, we disagree.

---

[6]After telling prospective jurors that trial would be held on prison grounds and explaining how to get there, the court asked: "Now, I don't think it's material at all and it's not relevant at all, but does anybody have any problem with the fact that we are going to be trying this case on state property at the prison? If so, raise your hand."

Prospective Juror Graves responded and said: "I'm retired from the prison 15 years. I haven't been out there in 15 years and I have no intentions of going out there now." He added: "I have high blood pressure from my retirement and that's why I just put that life out of my life, if you know what I mean." Graves said he did not know exactly where the courthouse was located on prison grounds but said, "Well, I will probably know some of the people on the prosecution side or whatever and I just don't care to go through it."

The prosecutor stipulated to excusing Graves for cause, but defendant did not. After an unreported conversation, the court explained again to Graves that the courthouse was not located inside the prison confines and there would be virtually no exposure to inmates. The court asked: "Would you still find it difficult under those circumstances?" and Graves answered: "I don't care to go out there." The court excused him from the jury panel.

When defense counsel later placed his objections on the record, he asserted: "[D]efendant has now been deprived of a jury of his peers. [¶] We have a juror who in all other respects is,

Although defendant characterizes the constitutional violation as the denial of a jury of his peers,[7] his claims actually focus on an alleged denial of his right to a representative jury. This claim is predicated on the exclusion of Graves who, according to defendant, belongs to the cognizable group of "retired [people] with an aversion or inability to return to [their] former place[s] of employment."

Defendant offers no authority identifying such a group as cognizable for purposes of evaluating whether a jury is representative of the community. ▮ "In order for there to be improper exclusion of a cognizable group 'there must be a common thread' shared by the group, 'a basic similarity of attitude, ideas or experience among its members so that the exclusion prevents juries from reflecting a cross-section of the community.' " (*People v. Henderson* (1990) 225 Cal.App.3d 1129, 1152-1153 [275 Cal.Rptr. 837], disapproved on other grounds in *People v. Davis* (1994) 7 Cal.4th 797, 806-807 [30 Cal.Rptr.2d 50, 872 P.2d 591].) These groups are generally distinguished by race, gender, religion, or ethnicity. (*People v. Henderson, supra*, 225 Cal.App.3d at p. 1153; *People v. Cervantes* (1991) 233 Cal.App.3d 323, 332 [284 Cal.Rptr. 410].) "It is clear that the groups recognized as cognizable classes are generally relatively large and well defined groups in the community whose members may, because of common background or experience, share a distinctive viewpoint on matters of current concern. Generally speaking, the courts have not recognized an otherwise heterogeneous group as cognizable merely because its members agree on one particular matter." (*People v. Fields* (1983) 35 Cal.3d 329, 349 [197 Cal.Rptr. 803, 673 P.2d 680].)

▮ The group described by defendant simply does not exhibit the requisite distinguishing characteristics, and the excusal of Prospective Juror

as far as I could tell today, may have been qualified to sit as a juror in this case, but because the case is now going to be tried on state prison grounds, he took himself off the case and/or we had to relieve him. I could not stipulate to that and did not stipulate to it, I want that made clear for the record, to his release. I felt he was a good juror. He is not on this case simply because it was at state prison grounds and I think we've got a problem now for the record is [*sic*] either we are going to have to try this case somewhere other than the state prison grounds or we now have again, and I think that what we have is [defendant] has now been deprived, as I say of a jury of his peers . . . ."

The court replied: "[W]ith regard to the last juror, Mr. Graves, the situation, the questions asked of him were asked in the context of all the questions that have been asked of the jury and that is can they be fair and impartial. He indicated he couldn't go out to the prison, wouldn't go out to the prison and evidenced a severe bias to this jurist about the prison. I didn't explore whether that bias extended to inmates or corrections officers because I didn't want to taint the jury. [¶] But he might have—I know judges who have the same bias with regard to going to the courthouse and they retired after 18, 20 years and they won't got to the courthouse and I don't know all together why. I, by the way, am not one of those judges, but I know judges who are. So I really am not sure that the argument has merit."

[7]Defendant does not explain how a retired correctional officer can be deemed his peer.

Graves does not implicate defendant's right to a representative jury. (Cf. *People v. Fields, supra,* 35 Cal.3d at p. 348 ["[P]ersons previously arrested, crime victims, believers in law and order, etc. are not identifiable groups whose representation is essential to a constitutional venire"]; *People v. Henderson, supra,* 225 Cal.App.3d at p. 1153 [young people, blue-collar workers, poor persons not cognizable classes].)

Prospective Juror Graves repeatedly voiced a strong aversion to returning to prison grounds. The trial court was in the best position to determine how that attitude might affect Graves's ability to be a fair and impartial juror. (*People v. McPeters* (1992) 2 Cal.4th 1148, 1178 [9 Cal.Rptr.2d 834, 832 P.2d 146].) The court did not abuse its discretion in excusing him from the jury panel. (*Id.* at p. 1176.)[8]

### II-IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

Davis, Acting P. J., and Raye, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 20, 2000.

---

[8]Moreover, the erroneous exclusion of a juror for cause generally does not provide a basis for reversing a judgment. (*People v. Holt* (1997) 15 Cal.4th 619, 656 [63 Cal.Rptr.2d 782, 937 P.2d 213].) Defendant offers no persuasive arguments for applying a different standard here.
 *See footnote, *ante,* page 772.