

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-21-00295-CR

Brian Dale **NIXON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 454th Judicial District Court, Medina County, Texas
Trial Court No. 16-04-11937-CR
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: July 31, 2023

REVERSED AND REMANDED

Appellant Brian Dale Nixon appeals his conviction for capital murder. In his first three issues, Nixon argues conducting his trial in an annex courtroom within the Medina County Jail building violated: (1) the presumption of innocence afforded to an accused; (2) his constitutional right to an impartial jury and due process right to a fair trial; and (3) section 24.012(e) of the Texas

Government Code.[1]  In his fourth issue, Nixon argues the venire panel did not fairly represent the demographics of Medina County because it was comprised of an underrepresentation of African Americans.  We reverse the judgment of conviction and remand the cause for a new trial consistent with this opinion.

## BACKGROUND

Nixon's trial was held in an annex courtroom that is in the same building as the Medina County Jail ("the jail").  Prior to the trial, Nixon filed a motion to change the venue to the Medina County Courthouse and strenuously objected to holding trial in the courtroom housed in the jail ("the jail courtroom").  In his motion, Nixon argued that holding jury selection or a jury trial in the jail courtroom presents a fundamental challenge to the fairness of jury selection and subsequent trial proceedings.  Specifically, Nixon contended a trial in the jail courtroom would undermine his presumption of innocence, violate due process, and impugn his right to a fair trial and an impartial jury.

On January 31, 2020, the trial court held a pretrial non-evidentiary hearing to address several pending motions including Nixon's motion to change the venue to the Medina County Courthouse.  In this initial hearing, the State argued voir dire and the jury trial should be held in the jail courtroom because it "has a much larger, more comfortable, and consistently climate[-]controlled jury room."  The State continued, "the comfort level, the ability to hear, and the consistency that we have in [the jail courtroom]" as well as "more modern [technology in the] courtroom" and "the parking and interaction with the general public is more conducive to this kind

---

[1] Section 24.012(e) of the Texas Government Code provides: A district judge may hear a nonjury matter relating to a civil or criminal case at a correctional facility in the county in which the case is filed or prosecuted if a party to the case or the criminal defendant is confined in the correctional facility.

TEX. GOV'T CODE ANN. § 24.012(e).

of trial." According to the State, it would be difficult for law enforcement to protect the public and ensure the jury does not see Nixon in shackles or prison clothes should the trial take place at the Medina County Courthouse because there is insufficient space in the courthouse.

Nixon responded that having a trial in the jail courtroom will imply to the jury that he is too dangerous to transport safely to the Medina County Courthouse. Nixon further argued that the implication of trying him in the jail courtroom would be equivalent to the impermissible implications drawn by a jury if he were tried in prison clothes and visible shackles. Nixon acknowledged "it's going to be more difficult to have [the trial] at the courthouse" but argued "the State has decided to try [him] for his life" and his fundamental rights to a fair trial, a fair and impartial jury, and the presumption of innocence should not be abridged by the implication that he is too dangerous to transport to the courthouse or that he deserves to be isolated in the jail facility before he is convicted of the crime for which he is charged.

After hearing arguments from Nixon and the State, the trial court—presided by a visiting judge—held the motion in abeyance stating it had "some concern about this" and needed more time to research the issues with the county courthouse and review caselaw on the matter.

On November 5, 2020, the trial court held an evidentiary hearing on Nixon's motion to transfer venue to the Medina County Courthouse. At this hearing, Nixon proffered nineteen photos depicting what jurors would see when they reported for jury duty at the jail courtroom, which were admitted into evidence without objection.[2]

At this evidentiary hearing, Nixon argued that holding the trial at the jail eroded the presumption of innocence thereby violating his right to an impartial jury and due process right to a fair trial. The gravamen of Nixon's argument before the trial court was as follows:

---

[2] We have attached a representative sampling of these photographs as an appendix to this opinion.

> [H]aving a trial in a jail is prejudicial . . . . You wouldn't try Mr. Nixon in jail clothing. You wouldn't try [him] visibly shackled. Because it would be prejudicial[.] Jurors are going to come in this courtroom and they are going to presume that this individual is probably guilty and he's dangerous. . . . [T]his facility here is not a neutral place to conduct business.

Nixon went on to argue that the State's justification—convenience—is not a compelling state interest to justify the prejudicial venue.

In response, the State argued the jail courtroom would not be prejudicial because the building was not wholly a jail. Instead, the State argued, it is an annex building housing the Sheriff's office, the Medina County Jail, and the annex courtroom. The State proffered a witness who stated the public uses the facility for other things. However, when pressed on the issue, the witness could only testify the building was used for "Crime Stoppers" meetings and as an emergency command center during county emergencies and disasters.

The State's witness also testified (1) the Medina County Courthouse has only one male restroom on the courtroom floor and jurors would have to be cleared out every time Nixon needed to use the restroom, and (2) it would be difficult to transport Nixon without jurors seeing him in shackles.

At the conclusion of the evidentiary hearing, the trial court denied the motion and stated it based its decision on: (1) security issues; (2) concerns about Nixon commingling with the jurors in the limited space at the courthouse; (3) the lack of restroom facilities at the courthouse; and (4) the lack of technology at the courthouse.

On July 6, 2021, voir dire took place at the Medina County fairgrounds. After the jury was selected, Nixon renewed his objection to the trial on the merits being held in the jail courtroom. The trial court again denied Nixon's objection and permitted Nixon to have a running objection to holding trial in the jail courtroom.

On July 7, 2021, Nixon's jury trial commenced in the jail courtroom. The trial court did not address the jury regarding the location of the trial or the reasons for holding the trial in the jail courtroom. The jury found Nixon guilty of capital murder, and the trial court sentenced him to life in prison without the possiblity of parole. Nixon appeals.

## DISCUSSION

In his first two issues, Nixon argues holding his trial in the jail courtroom eroded the presumption of innocence thereby violating his constitutional right to a fair and impartial jury and due process right to a fair trial. In his third issue, Nixon argues the building housing the jail courtroom fits within the definition of a correctional facility, and section 24.012(e) of the Texas Government Code prohibits a jury trial from taking place in a correctional facility. In his fourth issue, Nixon argues African Americans were underrepresented in the venire panel and this underrepresentation denied him the right to select a jury that accurately reflects the community.

Because his first two issues are dispositive, we need not address Nixon's third and fourth issues. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

## TRIAL IN A JAIL FACILITY

On appeal, Nixon argues the jailhouse setting is akin to forcing a defendant to be tried in prison clothing or visible shackles as was the case in *Estelle v. Williams*, 425 U.S. 501 (1976). Consequently, Nixon argues, holding the jury trial in the jail courtroom inherently prejudiced him because it implied to the jury that he is either guilty or too dangerous or detached from society to appear in the Medina County Courthouse. According to Nixon, this arrangement—and the implication thereof—created an unacceptable risk that this setting eroded his presumption of innocence. Nixon further argues that the reasons cited by the trial court for holding the trial at the

jail did not serve an essential state interest. Rather, Nixon argues, it served a purpose of convenience, and convenience does not further an essential state interest justifying the risk.

The State, citing *Holbrook v. Flynn*, 475 U.S. 560 (1986), argues this case is more akin to a jury trial where the presence of additional armed guards in the courtroom was held not to be inherently prejudicial. Consequently, the State argues Nixon must show actual prejudice. Because the record is devoid of actual prejudice, the State continues, Nixon's rights to an impartial jury and a fair trial were not violated.

In this appeal, we must decide an issue of first impression in Texas: Whether conducting a jury trial in a courtroom housed within a correctional facility, i.e., the Medina County Jail, is an inherently prejudicial practice that erodes the presumption of innocence afforded to a criminal defendant, thereby violating his right to an impartial jury and his due process right to a fair trial. We find guidance from the United States Supreme Court and the Texas Court of Criminal Appeals while addressing analogous issues. We also find instructive persuasive authority from other jurisdictions addressing this issue.

*A. Applicable Law*

The United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. CONST. amend. VI. Furthermore, the Fourteenth Amendment commands that no State shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV.

"The right to due process of law includes within it the right to a fair trial, and basic to a fair trial is the presumption of the defendant's innocence." *Marx v. State*, 987 S.W.2d 577, 581 (Tex. Crim. App. 1999); *see also Flynn*, 475 U.S. at 567 ("Central to the right to a fair trial, guaranteed by the Sixth and Fourteenth Amendments, is the principle that 'one accused of a crime is entitled

to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, *or other circumstances not adduced as proof at trial*.'" (quoting *Taylor v. Kentucky*, 436 U.S. 478, 485 (1978)) (emphasis added)); *Simpson v. State*, 447 S.W.3d 264, 265–66 (Tex. Crim. App. 2014) (mem. op.) ("The presumption of innocence is a basic component of a fair trial under our system of criminal justice.") (alteration omitted). "To implement [the presumption of innocence], courts must be alert to factors that may undermine the fairness of the fact-finding process and 'guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt.'" *Simpson*, 447 S.W.3d at 266 (quoting *Williams*, 425 U.S. at 503); *see also State v. Jaime*, 233 P.3d 554, 556 (Wash. 2010) ("In order to preserve a defendant's presumption of innocence before a jury, the defendant is entitled to the physical indicia of innocence which includes the right of the defendant to be brought before the court with the appearance, dignity, and self-respect of a free and innocent man.") (internal quotation marks omitted).

Quoting *Williams*, the Texas Court of Criminal Appeals has held:

> The actual impact of a particular practice on the judgment of jurors cannot always be fully determined. But this Court has left no doubt that the probability of deleterious effects on fundamental rights calls for close judicial scrutiny. Courts must do the best they can to evaluate the likely effects of a particular practice, based on reason, principle, and common human experience.

*Marx*, 987 S.W.2d at 581 (quoting *Williams*, 425 U.S. at 504). However, "a trial judge has broad discretion to control the business of the court and in how he preserves proper order and decorum." *Simpson*, 447 S.W.3d at 266.

"In *Estelle v. Williams*, the Supreme Court [held] that making a defendant wear identifiable prison clothing at his jury trial denies him due process and equal protection because 'of the impossible impairment of the presumption of innocence so basic to the adversary system.'" *Id.* (quoting *Williams*, 425 U.S. at 503–04). "On the other hand, in *Holbrook v. Flynn*, the Supreme

Court [held] that the presence of four uniformed state troopers sitting in the spectators' gallery, directly behind the accused, was not so inherently prejudicial that it denied the defendant a fair trial." *Simpson*, 447 S.W.3d at 266 (citing *Flynn*, 475 U.S. at 569). "This was because of 'the wider range of inferences' that a juror might reasonably draw from [the state troopers'] presence." *Simpson*, 447 S.W.3d at 266 (quoting *Flynn*, 475 U.S. at 569).

When a courtroom practice is challenged as inherently prejudicial, *Williams* and *Flynn* require the following inquiries:

> (1) [whether the practice] creates an unacceptable risk that the presumption of innocence will be eroded; and
>
> (2) [if so, does the practice] further an "essential" state [interest specific to each trial].

*Simpson*, 447 S.W.3d at 266; *see also Flynn*, 475 U.S. at 570 ("Whenever a courtroom arrangement is challenged as inherently prejudicial, therefore, the question must be not whether jurors actually articulated a consciousness of some prejudicial effect, but rather whether an unacceptable risk is presented of impermissible factors coming into play.") (internal quotation marks omitted).

Thus, when a courtroom practice creates an unacceptable risk that the presumption of innocence will be jeopardized, then the courtroom practice is inherently prejudicial. *See Simpson*, 447 S.W.3d at 266; *see also Flynn*, 475 U.S. at 568. And, an inherently prejudicial practice "should be permitted only where justified by an essential state interest specific to each trial." *Flynn*, 475 U.S. at 568–69.

"If a particular practice tends to brand the defendant with an unmistakable mark of guilt, it impairs the presumption of innocence and violates the Fourteenth Amendment's guarantee of due process of law, unless it furthers an essential state interest." *Marx*, 987 S.W.2d at 581. "If, on the other hand, the challenged practice need not be interpreted by jurors as a sign that the defendant is

particularly dangerous or culpable, it is not inherently prejudicial and does not deny due process." *Id.* The Texas Court of Criminal Appeals has cautioned "that inherent prejudice rarely occurs and is reserved for extreme situations." *Simpson*, 447 S.W.3d at 266 (internal quotation marks omitted).[3]

B. *Jurisdictions Holding a Jury Trial in a Jailhouse Courtroom is Inherently Prejudicial.*

    1. *State v. Jaime*, 233 P.3d 554 (Wash. 2010).

Nixon relies on *Jaime* to support his position—a strikingly similar case to the case at bar. In *Jaime*, the trial court held a jury trial in a courtroom located in the county jail over defense counsel's objection. *Jaime*, 233 P.3d at 555. The State argued the trial should be held at the jail because Jaime presented a serious security concern, and it was less likely the jury would see Jaime transported in shackles. *Id.* In rendering its decision, the trial court "noted allegations concerning threats by Jaime or his friends against the witnesses and alluded to Jaime's history of violent behavior in jail and escape attempts, explaining that there was better security in the jailhouse courtroom." *Id.* The trial court "also considered the convenience of holding the trial in the jailhouse courtroom because it was much easier to usher the jury in and out of the jailhouse courtroom in a timely fashion because the jury room was just across the hall from the courtroom." *Id.* at 555–56. The trial court "explained that it agreed with the State that there was less chance the jury would see Jaime in handcuffs if the trial took place in the jail." *Id.* at 556. "Finally, the

---

[3] "If a courtroom arrangement is not inherently prejudicial, then reviewing courts use a case-by-case approach to decide whether its use actually prejudiced the defendant." *Simpson*, 447 S.W.3d at 266–67. "The test to determine actual prejudice—the result of external juror influence—would be whether jurors actually articulated a consciousness of some prejudicial effect." *Id.* at 267 (internal quotation marks omitted). "In other words, the defendant must show a reasonable probability that the conduct or expression interfered with the jury's verdict." *Id.* Nixon does not point us to any evidence where the jurors actually articulated a consciousness of some prejudicial effect due to the courtroom arrangement. Thus, Nixon's issue wholly depends on whether holding the jury trial in the jail courtroom was inherently prejudicial.

[trial] court noted the jailhouse courtroom was designed to accommodate jury trials and was in design comparable to other courtrooms." *Id.*

On appeal, the *Jaime* court held the jailhouse setting was inherently prejudicial. It distinguished the case from *Flynn* noting a jail is much different than a courthouse:

> Given the character of a jail, a juror would not take a visit to a jailhouse for granted, nor would he or she be inured to the experience. *See* [*Flynn*, 475 U.S. at 569]. A juror's experience with jail is very likely limited to what our societal discourse tells us of jails: they are high-security places that house individuals who need to be in custody. That the average juror would draw a corresponding inference from that experience is reasonable to surmise.
>
> . . . .
>
> In short, under the analysis of [*Flynn*], holding a trial in a jailhouse courtroom is inherently prejudicial for two reasons. First, the setting is not in a courthouse, a public building whose purpose is to provide a neutral place to conduct the business of the law. Second, the setting that replaces the courthouse has a purpose and function that is decidedly not neutral, routine, or commonplace. Holding a criminal trial in a jailhouse building involves such a probability of prejudice that we must conclude it is inherently lacking in due process.

*Id.* at 557 (footnote omitted).

*2. State v. Cavan*, 98 P.3d 381 (Ore. 2004).

In *Cavan*, the charges arose from an incident within the prison and the courtroom in question was located in the visiting center of the prison. *Cavan*, 98 P.3d at 383–84. The *Cavan* court noted:

> Jurors must pass through metal detectors and have their hands stamped, and must store their personal effects in lockers. The doors are locked behind them. A juror wanting a smoking break must be escorted outside the main gate of the prison.

*Id.* at 383. "The [S]tate observed that the courtroom 'is in an area of the prison generally open to the public [which was] not materially different from any other courtroom." *Id.* (alterations in original).

Ultimately, the *Cavan* court held the prison courtroom setting was inherently prejudicial, stating:

> Holding a trial within the walls of a facility designed to segregate violent or dangerous persons from the public at large implies that there is some need for security measures above and beyond those of a normal trial. To be sure, the charges in this case arose out of an incident at the prison, and the jurors could have inferred that the court elected to hold the trial at the prison for administrative rather than safety reasons. But the decision to hold a trial at a prison is such a departure from the ordinary course, and the risk of singling defendant out in some impermissible way is sufficiently great, that we hold that the practice is inherently prejudicial.

> . . . Courts ordinarily hold criminal trials in courtrooms located within a public courthouse; that location is familiar to, or readily ascertainable by the public, and is a place where the public conducts a variety of governmental business. The public courthouse, and, by extension, the courtroom within, is an important component of the American adversarial tradition. The aura of neutrality that is inherent in the public courthouse is due in large part to the public's perception that the proceedings conducted there are under the control of an independent and impartial judiciary. That aura of neutrality and judicial impartiality contributes to and fosters the public's belief in, and, similarly, the public's own commitment to, impartiality in judicial proceedings.

> Unlike the public courthouse, prisons . . . are inherently dangerous places that the public, as a general matter, is unlikely to visit. A jury's perception of the neutrality of the proceedings that attend a trial in the public courthouse obviously is diminished when the court convenes a trial within the environs of a prison . . . . Gone is a jury's perception that the proceeding is in the firm control of the impartial and independent judiciary. Instead, the prison environment reminds the jury that the prison houses the most dangerous elements of society, many of whom are moving about within a few feet of the prison courtroom, and that the jury's physical safety, and to a large extent, the trial itself, are in the control of the prison administrators and corrections personnel. Finally, and perhaps more importantly, convening a trial in a prison . . . and not in a courthouse forcefully conveys to a jury the overriding impression of a defendant's dangerousness and we think, by extension, his or her guilt.

*Id.* at 388–89.

3. *State v. Lane*, 397 N.E.2d 1338 (Ohio 1979).

The *Lane* court held that "a trial within a maximum[-]security penitentiary with 12-foot high double walls, armed guards, high guard towers and visible barred windows [does not] allow[] a jury to maintain the delicate posture of impartiality which is a mainstay of our judicial system."

*Lane*, 397 N.E.2d at 1341. "The prison environment which is laden with a sense of punishment of the guilty within transmits too great an impression of guilt on the part of the inmate who is on trial." *Id.* at 1340–41. "By holding a trial within a prison for an offense committed within that same institution, the constitutional right to a fair trial is abridged in three ways: (1) The presumption of innocence which must attach to the criminal defendant is eroded; (2) there is a major interference with the jury's ability to remain impartial; and (3) the right of the defendant to obtain witnesses is chilled." *Id.* at 1340.

## C. *Jurisdictions Holding a Jury Trial in a Jailhouse Courtroom was not Inherently Prejudicial.*

### 1. *Harper v. State*, 887 So. 2d 817 (Miss. Ct. App. 2004).

The *Harper* court seemed to blur the lines between the right to a fair trial and the right to a public trial. In this case, the defendants were charged with burglary of a dwelling, grand larceny, and kidnapping committed while they were at large after escaping a maximum-security prison. *Harper*, 887 So. 2d at 819–20. The *Harper* court determined a trial within the prison was not inherently prejudicial because "[t]he jury would learn that the defendants escaped from the maximum[-]security unit at Parchman, a fact that was not contested." *Id.* at 826. It continued, "since the jury would learn these facts, there is no prejudice that can result from the jury seeing that which was already, or inevitably would be, known." *Id.*

The *Harper* court also held the State had shown an essential state interest would be furthered by a prison trial because "Harper and Woolard were dangerous, violent[,] and habitual offenders" who would "do anything to remain free." *Id.* Notably, the *Harper* court also upheld the trial court's decision to try the defendants in prison clothing and visible shackles because, according to an officer's testimony, the defendants were "extremely high-risk and to remove any restraints would be amiss due to their past escapes." *Id.* at 827–28.

2. *State v. Daniels*, 40 P.3d 611 (Utah 2002).

In *Daniels*, the defendant was charged with a murder committed while he was an inmate in the prison where the trial was conducted. *Daniels*, 40 P.3d at 614. The *Daniels* court held:

> [J]urors could have drawn an equally wide range of alternative inferences from the fact that the trial was held inside the prison. The impact was not limited to an inference that the defendant was a dangerous or untrustworthy individual. The jurors could have just as easily inferred that (1) it was preferable to hold the trial inside the prison instead of transporting the inmate witnesses to a courthouse outside of the prison with the attendant financial cost and security risk; (2) holding the trial in the prison courtroom enabled prison officials to testify without requiring them all to travel to the courthouse . . . ; (3) it was necessary for the safety of those involved in the trial to hold the trial in a prison courtroom because many of the witnesses were inmates; (4) the jurors needed to be able to tour the crime scene, which they did, because the incident occurred at the prison; (5) it was simply preferable to hold the trial in a newer, more modern courtroom; (6) the prison courtroom was better equipped to handle spectators or potential security risks from outside groups that may arise from a racially-related homicide; or (7) the jury could have inferred nothing. Thus, it is equally likely that jurors may have inferred that the trial took place in a prison courtroom because of the circumstances surrounding the nature of the case, and that the location of the trial had nothing to do with the defendant's character. It is also probable, indeed our system depends on the assumption that, the jurors inferred nothing and followed their oath, adhering to the instructions given them and impartially applying the law given them to the facts they found in viewing the evidence presented at trial.

*Id.* at 619.

The *Daniels* court further held, however, "that to hold a criminal trial in a courtroom located inside a prison or other facility simply because a defendant is already incarcerated, or because to do so would be more safe or convenient, would also be error, absent adequate findings and compelling reasons." *Id.* at 620.

3. *California v. England*, 100 Cal. Rptr.2d 63 (Cal. Ct. App. 2000).

In *England*, the defendant was in prison when he resisted correctional officers' attempts to search his prison cell and stabbed two correctional officers with a sharp instrument. *England*, 100 Cal. Rptr.2d at 65. The defendant was tried in a courtroom on prison grounds where he was

incarcerated, but outside the prison wires. *Id.* at 65–67. The *England* court held the trial in the prison setting was not inherently prejudicial for the following reasons:

> The courtroom [at the prison] was physically and visually remote from the facilities and activities of the prison as the courtroom was located in a building outside the prison wires. The only inmates that jurors might have seen were those working in gardens around the building.
>
> Juror travel to the courthouse did not present any problems. Again, the courtroom was not within the actual confines of the prison, and jurors could drive directly to the courtroom.
>
> The courtroom was accessible to the press and general public although, as the court explained, visitors would have to identify themselves at the gate. This security measure does not make the courtroom inaccessible.
>
> Finally, the court took additional measures to ensure the fairness of proceedings by asking prospective jurors whether they would be adversely affected by a trial held on prison grounds. . . . [T]he one juror who expressed serious reservations was excused from service.

*Id.* at 66–67.

The *England* court held, under the facts of this case, the trial location satisfied the standards of a California statute that "ensure[s] the fairness of judicial proceedings." *Id.* at 69. Consequently, the *England* court held "[t]he trial site did not prejudice the jury, affront anyone's dignity, cause disrespect for the judicial system, or impact defendant's decisions at trial in any way." *Id.*

4. *Howard v. Virginia*, 367 S.E.2d 527 (Va. Ct. App. 1988).

In *Howard*, the defendant—who was in prison when the crime occurred—conspired with three other inmates to lock a fifth inmate in his cell and burn him alive. *Howard*, 367 S.E.2d at 529. The defendant was charged with conspiracy to commit capital murder. *Id.* at 528. After learning that twenty-two inmate witnesses had been subpoenaed, the trial court decided to conduct the trial in an administration building located immediately outside a correctional center compound. *Id.* at 529. The trial court based its decision on a factual finding that the courthouse personnel

could not adequately provide for the safety of the inmates, witnesses, jurors, and the general public. *Id.* at 531.

The *Howard* court held the trial setting was not inherently prejudicial because Howard was tried in a courtroom outside the prison compound, there was no indication the jurors could see the prison from the courtroom, and the jurors did not have to pass through gates or other security devices. *Id.* at 532. The court noted the jury could have reasonably concluded the trial was being conducted in the administration building for efficiency and convenience because Howard was being tried for the murder of another inmate and many of the witnesses either worked at or were incarcerated in the adjacent correctional facility. *Id.* As such, the *Howard* court concluded "the location of Howard's trial did not impermissibly suggest that he was guilty of the offense for which he was being tried or otherwise operate to inherently prejudice him." *Id.*

D. *Analysis*

First, we must determine whether holding the jury trial in the jail courtroom in the case at bar creates an unacceptable risk that the presumption of innocence will be eroded. If we determine this question in the affirmative, then we must next determine whether the jail courtroom setting furthered an essential state interest to justify the risk.

1. *Whether a Jury Trial in the Jail Courtroom Creates an Unacceptable Risk that the Presumption of Innocence Will be Eroded.*

Here, the first thing jurors will see as they approach the building where the trial took place are large letters stating "MEDINA COUNTY JAIL" over the entrance. There is no indication this building is an annex building that is used for purposes other than to house people that society has deemed necessary to isolate from the population at large. As jurors walk into the building, they are immediately confronted with glass doors with posted signs stating cell phones, cameras, recording devices, purses, and packages are banned. As jurors walk through the glass doors, they

enter a small, windowless lobby that contains the jail information desk, the entrance to the confinement portion of the jail that states "AUTHORIZED PERSONNEL ONLY," jail visitation rooms, a security window that allows you to speak with a receptionist from the sheriff's office, and a machine to deposit money into an inmate's account. The machine is wrapped in a large image containing handcuffs. There is a sign posted by the jail administrator on one of the visitation room doors that states visitors will be banned from visitation indefinitely if they are caught with a cell phone.

"[T]he courtroom in Anglo-American jurisprudence is more than a location with seats for a judge, jury, witnesses, defendant, prosecutor, defense counsel[,] and public observers; the setting that the courtroom provides is itself an important element in the constitutional conception of trial, contributing a dignity essential to 'the integrity of the trial' process." *Estes v. Texas*, 381 U.S. 532, 561 (1965). The only indication that the Medina County Jail building is used for any other purpose than to house criminals segregated from the public at large is a small sign stating, "DISTRICT COURT IN SESSION" on one of two solid doors along-side a single, small wall-placard stating "COURTROOM."

We believe a jury trial setting in a building with markings that indicate to the public that the primary and substantial purpose of the building is to operate as a jail is more akin to the impermissible practice of trying a defendant in prison clothes and shackles rather than the permissible practice of allowing additional armed guards to sit in the courtroom. *Compare Williams*, 425 U.S. at 512 (holding "the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes . . ."), *with Flynn*, 475 U.S. at 571 (holding the presence of four uniformed state troopers was not so inherently prejudicial that it denied the defendant a fair trial).

Much like a jury may draw impermissible inferences from a defendant wearing shackles or prison clothing, a jury will likewise draw impermissible inferences from a defendant being tried in a building branded with the markings of guilt. *See Marx*, 987 S.W.2d at 581. It is no leap of logic to think a jury will determine the defendant must be guilty because he or she is too dangerous or culpable to be tried in a courthouse. *See id.* The defendant is not being tried solely on the evidence and permissible inferences therefrom, but rather on the impermissible inferences drawn from the location of his trial. The jailhouse venue vitiates the "aura of neutrality and judicial impartiality [that] contributes to and fosters the public's belief in, and, similarly, the public's own commitment to, impartiality in judicial proceedings." *Cavan*, 98 P.3d at 389.

We do not suggest that a trial setting in a building that houses a courtroom and a correctional facility will always erode the presumption of innocence afforded to a defendant. However, under the facts of this case, the various markings reminding the jury that the building at issue here has a primary purpose as a jail created an unacceptable risk that the jury would conclude, before hearing any evidence, that Nixon is too dangerous to transport and must be isolated from society. *See Flynn*, 475 U.S. at 567 ("One accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial."). This unacceptable risk undermined the fairness of the fact-finding process and diluted the principle that guilt is to be established by probative evidence and beyond a reasonable doubt, and thus created a substantial likelihood that the presumption of innocence that should have been afforded to Nixon would be eroded. *See Simpson*, 447 S.W.3d at 266 ("To implement [the presumption of innocence], courts must be alert to factors that may undermine the fairness of the fact-finding process and 'guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt.'" (quoting *Williams*, 425 U.S. at 503)).

Accordingly, we hold the trial court setting in the jail courtroom created an unacceptable risk that the presumption of innocence afforded to Nixon was eroded.

2. *Whether Holding the Jury Trial in the Jail Courtroom Furthered an Essential State Interest.*

Having determined the jury trial in the jail courtroom created an unacceptable risk that the presumption of innocence afforded to Nixon was eroded, we next determine whether the record shows the setting furthered an essential state interest specific to this trial. *See Flynn*, 475 U.S. at 568–69 (holding an inherently prejudicial practice "should be permitted only where justified by an essential state interest specific to each trial").

Because there is no Texas authority on whether conducting a jury trial in a jail courtroom is inherently prejudicial, there is likewise no Texas authority on what essential state interests may justify the jailhouse setting for a jury trial. Accordingly, we look to analogous cases where a prejudicial practice must be justified by essential state interests. In *Bell v. State*, 415 S.W.3d 278 (Tex. Crim. App. 2013)—a case addressing the inherently prejudicial effect when a defendant appears before the jury in shackles—the Court of Criminal Appeals listed "physical security, escape prevention, or courtroom decorum" as potential essential state interests justifying the defendant's appearance in shackles. *See Bell v. State*, 415 S.W.3d 278, 281 (Tex. Crim. App. 2013). However, the *Bell* court held the practice is only justified when it is necessary for a particular defendant in a particular proceeding. *Id.* Further, "the record must manifest the trial judge's reasons for restraining a defendant," and "[w]hen the record fails to detail the grounds for restraint, a trial judge errs in ordering a defendant shackled." *Id.*

In *Lilly v. State*, the defendant complained the trial court violated his constitutional right to a public trial when it conducted the trial in a correctional facility. 365 S.W.3d 321, 326 (Tex. Crim. App. 2012). The *Lilly* court held the party seeking closure of the trial to the public must:

(1) assert an overriding interest to justify the closure; (2) the closure must be no broader than necessary to protect the overriding interest; (3) the trial court must consider reasonable alternatives to closing the proceeding; and (4) the trial court must make adequate findings to support the closure. *Id.* at 328–29. "The findings must be on the record and specific." *Id.* at 329 (internal quotation marks omitted). Generic findings will not suffice because the findings must be specific enough that a reviewing court can determine whether the closure was justified. *Id.* "[A] reviewing court cannot 'satisfy the deficiencies in the trial court's record' by making post hoc assertions inferring an overriding interest[.]" *Id.* (quoting *Waller v. Georgia*, 467 U.S. 39, 49 n.8 (1984)) (footnote omitted). [I]t is reversible error when the record fails to show that a trial court considered all reasonable alternatives to closure." *Id*. (citing *Presley v. Georgia*, 558 U.S. 209, 215–16 (2010)).

Applying these principles to the case at bar, the trial court must make adequate findings that the jailhouse setting is justified by an essential state interest specific to this trial and was required to consider reasonable alternatives to conducting the jury trial in the jail courtroom. The findings cannot be generic and must be on the record and specific.

The trial court cited four reasons for holding the jury trial in the jail courtroom: (1) security issues; (2) concerns about Nixon commingling with the jurors in the limited space at the courthouse; (3) the lack of restroom facilities at the courthouse; and (4) the lack of technology at the courthouse.

At the outset, we note the cases from other jurisdictions—holding a jury trial conducted in a correctional facility was justified—involved defendants who had either escaped from prison or were tried in the same correctional facility where they allegedly committed the crimes for which they were charged. *See Harper*, 887 So. 2d at 819–20 (crimes committed while defendants were at large following their escape from maximum-security prison); *see also Daniels*, 40 P.3d at 614

(crime committed while defendant was an inmate at the correctional facility he was tried in); *England*, 100 Cal. Rptr.2d at 65 (same); *Howard*, 367 S.E.2d at 529 (same). Those cases presented legitimate security concerns because the defendants were shown to be at high risk of escaping, particularly dangerous, or most of the witnesses were inmates or guards of the prison.

At the evidentiary hearing in this case, Gilberto Rodriguez, Chief Deputy for the Medina County Sheriff's Department, testified the security concerns with having the trial at the Medina County Courthouse rather than the jail courtroom included a "lack of space[.]" Chief Deputy Rodriguez further stated "the conference room . . . also serves as the jury room" and "it would be very difficult to separate the jury from the defendant . . . ." Chief Deputy Rodriguez also testified there is only one men's restroom "[o]n that floor" in the courthouse. Chief Deputy Rodriguez agreed with the State that the jail courtroom is convenient because it allows the Sheriff's Department to bring individuals from jail directly to the courtroom rather than transporting them downtown to the courthouse. The State argued the jury may see Nixon in prison clothes and shackles if he were transported to the courthouse every day. Though it did not present any evidence regarding the lack of technology in the courthouse, the State argued this was another reason for holding the trial in the jail courtroom.

"[C]ertain practices pose such a threat to the 'fairness of the factfinding process' that they must be subjected to 'close judicial scrutiny.'" *Flynn*, 475 U.S. at 568 (quoting *Williams*, 425 U.S. at 503–04). Here, the record is completely devoid of any evidence that the jail courtroom setting furthered an essential state interest that would justify the unacceptable risk jeopardizing Nixon's presumption of innocence. Moreover, the trial court only made general findings and did not consider alternative means to accommodate the purported essential state interests proffered by the State.

While Chief Deputy Rodriguez stated a lack of space and potential commingling of the jury could create a security concern, he did not elaborate on how this lack of space would create a security concern. In fact, the trial judge stated on the record that he had previously "tried a week and a half jury trial" in the Medina County Courthouse.

For its second reason justifying holding the trial in the jail courtroom, the trial court cited concerns about Nixon commingling with the jurors in the limited space at the courthouse. The State argued the jurors might see Nixon in prison clothes and shackles while being transported to the Medina County Courthouse. However, this concern was also raised in a pretrial hearing while the parties discussed issues with holding voir dire at the Medina County fairgrounds. The trial court informed the bailiff to bring Nixon to the fairgrounds early before jurors arrived so they would not see him being transported. The trial court further ordered Nixon not be clothed or restrained in a manner "overtly showing that he's in custody." This indicates the same measures could have been taken to prevent jurors from seeing Nixon in prison clothes and shackles had the trial taken place at the courthouse. Moreover, there is no evidence from the record that suggests Nixon was ever a security threat.

Although Chief Deputy Rodriguez mentioned there was only one men's restroom on the floor of the courtroom, he did not explain why either Nixon or the jurors could not use the men's restroom on other floors of the county courthouse.

Finally, the availability of technology and the State's argument that the jail courtroom is "a more modern courtroom" for "modern jurors" are impermissible factors of convenience. *See Daniels*, 40 P.3d at 620 ("[T]o hold a criminal trial in a courtroom located inside a prison or other facility simply because a defendant is already incarcerated, or because to do so would be more safe or convenient, would also be error, absent adequate findings and compelling reasons."); *see also Jaime*, 233 P.3d at 558 ("[T]he trial court considered impermissible factors involving convenience

in making its decision, as well as general concerns that would be applicable to any defendant who is in custody during trial . . . .").  "That it may be more convenient [to employ an inherently prejudicial practice], provides no justification for the practice."  *Williams*, 425 U.S. at 505.

The record does not support the furtherance of an essential state interest to justify holding Nixon's trial in the Medina County Jail building.  Accordingly, we hold this trial setting was an inherently prejudicial practice, and the trial court erred when it conducted Nixon's trial in the jail courtroom housed within the Medina County Jail building.

We sustain Nixon's first two issues.

## CONCLUSION

We reverse the judgment of conviction and remand the cause for a new trial consistent with this opinion.

Irene Rios, Justice

PUBLISH

**APPENDIX**

Exhibit 1:



Exhibit 4:



Exhibit 5:



Exhibit 6:



Exhibit 12:



Exhibit 13:



Exhibit 14:



Exhibit 18:

